1
2
3
4
5
6

Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Orlando Villalba (SBN 232165)
Orlando.Villalba@capstonelawyers.com
Joseph Hakakian (SBN 323011)
Joseph.Hakakian@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

7

Attorneys for Plaintiff Paul Clark

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

10

| | |
|---|---|
| 11 PAUL CLARK, individually, and on behalf of other members of the general public similarly situated and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"), 12 13 14    Plaintiff, 15    vs. 16 QG PRINTING II, LLC, a Connecticut limited liability company; 17 QUAD/GRAPHICS, INC., a Wisconsin corporation; and DOES 1 through 10, 18 inclusive, 19    Defendants. | Case No.: 1:18-cv-00899-AWI-EPG  **SECOND AMENDED CLASS ACTION COMPLAINT & ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698, *ET SEQ.***  (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages); (3) Violation of California Labor Code §§ 226.7, 512(a), and 1198 (Failure to Provide Meal Periods); (4) Violation of California Labor Code §§ 226.7 and 1198 (Failure to Provide Rest Periods); (5) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); (6) Violation of California Labor Code §§ 201, 202, and 203 (Wages Not Timely Paid Upon Termination); (7) Violation of California Labor Code § 2802 (Unreimbursed Business Expenses); (8) Violation of California Labor Code §§ 551, 552, and 558 (Failure to Provide One Day of Rest in Seven); (9)  Civil Penalties for Violations of |

California Labor Code, Pursuant to
PAGA, §§ 2698, *et seq.;*
(10)    Violation of California Business &
Professions Code §§ 17200, *et seq.*
(Unlawful Business Practices); and
(11)    Violation of California Business &
Professions Code §§ 17200, *et seq.* (Unfair
Business Practices)

**Jury Trial Demanded**

Plaintiff Paul Clark, individually and on behalf of all other members of the public similarly situated, and as aggrieved employees and on behalf of all other aggrieved employees, alleges as follows:

**JURISDICTION AND VENUE**

1. This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover wages and all other available relief on behalf of Plaintiff and all similarly situated current and former non-exempt, hourly paid employees of Defendants, and a non-class representative enforcement action brought pursuant to the Labor Code Private Attorneys General Act of 2004, California Labor Code sections 2698, *et seq.* ("PAGA") to recover civil penalties and any other available relief on behalf of Plaintiff, the State of California, and other current and former employees who worked for Defendants in California as non-exempt, hourly-paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in this complaint.

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) and based on 28 U.S.C. §§ 1441, 1446.

3. Venue is proper in this Court, because this case was originally filed in the Superior Court of California for the County of Merced.  Venue properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(a), 1391(b) and 1441(a).

4. The PAGA statute authorizes aggrieved employees to sue directly as the proxy of the State of California for civil penalties for violations of various provisions in the California Labor Code.

**THE PARTIES**

5. Plaintiff Paul Clark is a resident of Merced, in Merced County, California. Defendants employed Plaintiff as a non-exempt, hourly-paid General Worker from approximately June 2017 to April 2018.  During his employment, Plaintiff worked for

Defendants at their Merced, California facility.  Plaintiff worked approximately twelve (12) hours per day, five (5) days per week, and approximately sixty (60) hours per week.  His job duties included, without limitation, running the stacker machine, setting up and cleaning the press, stacking product, and cleaning the press area.

6.      Defendant QG PRINTING II, LLC was and is, upon information and belief, a Connecticut limited liability company doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

7.      Defendant QUAD/GRAPHICS, INC. was and is, upon information and belief, a Wisconsin corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county, the State of California, or the various states of the United States of America.

8.      Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

9.      Plaintiff is informed and believe, and thereon alleges, that DOES 1 through 10 are the partners, agents, owners, shareholders, managers, or employees of QG PRINTING II, LLC and QUAD/GRAPHICS, INC. at all relevant times.

10.      Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, QG PRINTING II, LLC, QUAD/GRAPHICS, INC., and/or DOES 1 through 10 (collectively "Defendants" or "QUAD/GRAPHICS"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

11.      At all relevant times, Defendants, and each of them, ratified each and every act

or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

12.    Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

13.    Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff and class members. Each Defendant had the power to hire and fire Plaintiff and class members, supervised and controlled their work schedules and/or conditions of employment, determined their rate of pay, and maintained their employment records.  Defendants suffered or permitted Plaintiff and class members to work and/or "engaged" Plaintiff and class members so as to create a common law employment relationship.  As joint employers of Plaintiff and class members, Defendants are jointly and severally liable for the civil penalties and all other relief available to Plaintiff and class members under the law.

14.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class members because Defendants have:

(a)    jointly exercised meaningful control over the work performed by Plaintiff and class members;

(b)    jointly exercised meaningful control over Plaintiff's and class members' wages, hours, and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiff and class members;

(c)    jointly required that Plaintiff and class members perform work which is an integral part of Defendants' businesses; and jointly exercised control over Plaintiff and class members as a matter of economic reality in that

Plaintiff and class members were dependent on Defendants, who shared the power to set the wages of Plaintiff and class members and determine their working conditions, and who jointly reaped the benefits from the underpayment of their wages and noncompliance with other statutory provisions governing their employment.

15.    Plaintiff is informed and believes, and further alleges, that at all relevant times there has existed a unity of interest and ownership between Defendants such that any individuality and separateness between the entities has ceased.

16.    QG PRINTING II, LLC, QUAD/GRAPHICS, INC., and DOES 1-10 are therefore alter egos of each other.

17.    Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege, and would promote injustice by protecting Defendants from liability for the wrongful acts committed by them under the name QUAD/GRAPHICS.

18.    Plaintiff further alleges, upon information and belief, that Defendants are alter egos of each other for the additional following reasons:

(a)    According to QUAD/GRAPHICS, INC.'s Annual 10-K SEC filing,[1] QG PRINTING II, LLC is a wholly-owned subsidiary of QUAD/GRAPHICS, INC.;

(b)    On information and belief, QG PRINTING II, LLC and QUAD/GRAPHICS, INC. utilize the same standardized employment forms and issue the same employment policies; and

(c)    QG PRINTING II, LLC and QUAD/GRAPHICS, INC. share the same corporate address of N61 W23044 Harrys Way, Sussex, WI 53089.

**GENERAL ALLEGATIONS**

19.    Defendants are a leading provider of print and media solutions to clients across the globe.  One division of QUAD/GRAPHICS, QG PRINTING II, LLC, provides printing

---

[1] "SEC Filings – Quad Graphics," available at http://investors.qg.com/phoenix.zhtml?c=231687&p=irol-sec, last accessed May 18, 2018.

services for magazines, catalogs, and retail advertising inserts.  In California, Defendants operate four printing facilities.  Upon information and belief, Defendants currently employ approximately 1000 employees in California.

20.    Upon information and belief, Defendants maintain a single, centralized Human Resources (HR) department, at their corporate headquarters in Sussex, Wisconsin, which is responsible for conducting Defendants' recruiting and hiring of new employees, as well as communicating and implementing Defendants' company-wide policies.

21.    Upon information and belief, Defendants maintain a centralized Payroll department at their corporate headquarters in Sussex, Wisconsin, which processes payroll for all non-exempt, hourly-paid employees working for Defendants at their various locations in California, including Plaintiff and class members.

22.    Defendants continue to employ non-exempt or hourly-paid employees in California.

23.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

24.    Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class members were not paid for all hours worked because all hours worked were not recorded.

25.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

26.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

27.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the Labor Code or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

28.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with a compliant rest period and that Plaintiff and class members were not provided compliant rest periods or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided a compliant rest period.

29.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, and meal and rest period premiums, within permissible time periods.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, and meal and rest period premiums, within permissible time periods.

31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to one day's rest in seven. In violation of the California Labor Code, Defendants required Plaintiff and class members to

work more than six consecutive days without a day of rest, where the total hours worked exceeded 30 hours in any week or six hours in any one day thereof.

32.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

33.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to provide Plaintiff and class members with personal protective equipment to protect their life, safety, and health in the workplace, but willfully, knowingly, and intentionally failed to do so.

34.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff and class members for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and class members that they were properly denied wages, all in order to increase Defendants' profits.

35.    At all times herein set forth, PAGA provides that any provision of law under the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and collected by the LWDA for violations of the California Labor Code and applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on behalf of themselves and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

36.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

37.    Plaintiff and other current and former employees of Defendants are "aggrieved employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current

or former employees and one or more of the alleged violations were committed against them.

38.     Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

(a)     The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

(b)     An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)     The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation ("LWDA's Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

39.     Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a)     The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the

1    facts and theories to support the alleged violation.

2        (b)    An aggrieved employee's notice filed with the LWDA pursuant to

3    2699.3(c) and any employer response to that notice shall be

4    accompanied by a filing fee of seventy-five dollars ($75).

5        (c)    The employer may cure the alleged violation within thirty-three (33)

6    calendar days of the postmark date of the notice sent by the aggrieved

7    employee or representative.  The employer shall give written notice

8    within that period of time by certified mail to the aggrieved employee or

9    representative and by online filing with the LWDA if the alleged

10    violation is cured, including a description of actions taken, and no civil

11    action pursuant to Section 2699 may commence.  If the alleged violation

12    is not cured within the 33-day period, the aggrieved employee may

13    commence a civil action pursuant to Section 2699.

14        40.    On December 7, 2018, Plaintiff provided written notice by online filing to the

15    LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor

16    Code alleged to have been violated, including facts and theories to support the alleged

17    violations, in accordance with California Labor Code section 2699.3.  Plaintiff's written

18    notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  The

19    LWDA PAGA Administrator confirmed receipt of Plaintiff's written notice and assigned

20    Plaintiff PAGA Case Number LWDA-CM-644299-18.  A true and correct copy of Plaintiff's

21    written notice to the LWDA and Defendants is attached hereto as "Exhibit 1."

22        41.    As of the filing date of this complaint, over 65 days have passed since Plaintiff

23    sent the notice described above to the LWDA, and the LWDA has not responded that it

24    intends to investigate Plaintiff's claims and Defendants have not cured the violations.

25        42.    Thus, Plaintiff has satisfied the administrative prerequisites under California

26    Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for

27    violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a),

28    551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

43.     Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

44.     Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

45.     As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

46.     Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), and 2699.5, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

### CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on his own behalf, as well as on behalf of each and all other persons similarly situated, and thus seek class certification under California Code of Civil Procedure section 382.

48.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

49. Plaintiff's proposed class consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly-paid employees in California, within four years prior to the filing of the initial complaint until the date of trial ("Class").

50. Plaintiff's proposed subclass consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly-paid employees in California and who received at least one wage statement within one year prior to the filing of the initial complaint until the date of trial ("Subclass").

51. Members of the Class and Subclass are referred to herein as "class members."

52. Plaintiff reserves the right to redefine the Class and to add additional subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

53. There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

    (a) Whether Defendants required Plaintiff and class members to work over eight (8) hours per day, over twelve (12) hours per day, or over forty (40) hours per week and failed to pay all legally required overtime compensation to Plaintiff and class members;

    (b) Whether Defendants failed to pay Plaintiff and class members at least minimum wages for all hours worked;

    (c) Whether Defendants failed to provide Plaintiff and class members with meal periods;

    (d) Whether Defendants failed to provide Plaintiff and class members with rest periods;

    (e) Whether Defendants provided Plaintiff and class members with complete and accurate wage statements as required by California Labor Code section 226(a);

    (f) Whether Defendants failed to pay earned overtime wages, minimum wages, and meal and rest period premiums due to Plaintiff and class members upon their discharge;

SECOND AMENDED CLASS ACTION COMPLAINT

(g)     Whether Defendants failed to timely pay overtime wages, minimum wages, and meal and rest period premiums to Plaintiff and class members during their employment;

(h)     Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(i)     Whether Defendants failed to provide Plaintiff and class members one day's rest in seven;

(j)     Whether Defendants failed to provide Plaintiff and class members with personal protective equipment;

(k)     Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and,

(l)     The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

54.     There is a well-defined community of interest in the litigation and the class members are readily ascertainable:

(a)     <u>Numerosity</u>:  The class members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records.

(b)     <u>Typicality</u>:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom they have a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all class members as demonstrated herein.

(c)     <u>Adequacy</u>:  Plaintiff is qualified to, and will, fairly and adequately

protect the interests of each class member with whom they have a well-defined community of interest and typicality of claims, as demonstrated herein.  Plaintiff acknowledges that they have an obligation to make known to the Court any relationship, conflicts or differences with any class member.  Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(d)    Superiority:  The nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

(e)    Public Policy Considerations:  Employers in the State of California violate employment and labor laws every day.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means.  Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights while simultaneously protecting their privacy.

///

///

///

SECOND AMENDED CLASS ACTION COMPLAINT

**FIRST CAUSE OF ACTION**

**Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

**(Against all Defendants)**

55.     Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.  California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

56.     California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

57.     Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time and one-half (1½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

58.     The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiff and class members working more than twelve (12) hours in a day, overtime compensation at a rate of two (2) times their regular rate of pay, and required to pay Plaintiff and class members at a rate of two (2) times their regular rate of pay for hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of a work in a workweek.

59.     At all relevant times, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members.  At all relevant times, Plaintiff and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

60.     During the relevant time period, Defendants had, and continue to have, a company-wide policy of failing to implement any policies to authorize and permit employees to take compliant meal periods and, instead, engaged in a practice of discouraging and impeding employees from taking meal periods by assigning them a heavy workload and understaffing their printing facilities.  Plaintiff and class members were expected to meet certain deadlines for print jobs, as these were scheduled on a time-sensitive basis.

61.     Additionally, Defendants, on a company-wide basis, failed to schedule meal periods even though they are aware that employees are entitled to such meal periods.  As a result of this company-wide understaffing of its facilities and failure to schedule meal periods, Plaintiff and class members were not always permitted and authorized to take uninterrupted 30-minute meal periods during shifts to which they were entitled to receive a meal period.  For example, Plaintiff regularly worked through meal periods and had meal periods interrupted by supervisors and by work to meet expected targets.

62.     At all relevant times, Defendants had no policy for scheduling second meal periods and no practice of permitting Plaintiff and class members to take second 30-minute meal periods.  As a result, on days that Plaintiff and class members worked in excess of ten (10) hours, they were not provided with second 30-minute meal periods, but, on information and belief, were required to clock out.  Plaintiff and class members did not sign valid meal period waivers on days that they were entitled to meal periods but were not relieved of all duties.

63.     Further, Defendants had, and continue to have, a company-wide policy and/or practice requiring Plaintiff and class members to know their printer assignments before going down to the floor.  For example, Plaintiff arrived to his shift thirty (30) minutes before his scheduled start time so he could check the assignment board, prepare his tools, and speak to employees who worked the previous shift to find out if there were any ongoing issues.  It was not possible for Plaintiff to complete all these tasks on the clock because the time clock would not permit Plaintiff and class members to clock in any earlier than five (5) minutes before their scheduled shift start times, so they would work off-the-clock to start these duties.

Additionally, due to understaffing, Plaintiff was required to stay after his scheduled shift to complete tasks in order to meet particular deadlines.  Defendants did not compensate Plaintiff and class members for the time they spent off-the-clock performing these tasks.

64.    Defendants knew or should have known that, as a result of their policies and practices, Plaintiff and class members were performing some of their assigned duties off-the-clock and/or during unpaid meal periods, and were suffered or permitted to perform work for which they were not paid.  Because Plaintiff and class members worked shifts in excess of eight (8) hours a day or more and forty (40) hours a week or more, much of this off-the-clock work qualified for overtime premium pay.  Therefore, Plaintiff and class members were not paid overtime wages for all of the overtime hours they actually worked.  To the extent Plaintiff and class members worked shifts in excess of twelve (12) hours a day, or in excess of eight (8) hours on the seventh (7th) consecutive day of a work in a workweek, Plaintiff and class members were not paid double time wages for all overtime hours they actually worked.

65.    Defendants' failure to pay Plaintiff and class members the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.  Pursuant to California Labor Code section 1194, Plaintiff and class members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid Minimum Wages

### (Against All Defendants)

66.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

67.    At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful.  Compensable work time is defined by the applicable wage order as "the

time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11010(2)(G) (defining "Hours Worked").

68.     As described above, due to Defendants' company-wide scheduling practices and policies, Plaintiff and class members were forced to forego meal periods and/or have their meal periods interrupted by work, and were not relieved of all duties for unpaid meal periods, in order to meet their deadlines and handle their workloads.  Defendants did not pay minimum wages for meal periods Plaintiff and class members worked through that qualified for overtime premium payment.  Defendants did not pay Plaintiff and class members for the time they continued to perform their duties during their meal periods.

69.     As also stated, Defendants had no policy and/or practice for scheduling second meal periods for employees or for authorizing and permitting Plaintiff and class members to take second 30-minute meal periods on days they worked in excess of ten (10) hours in one day.  As a result, Defendants did not provide Plaintiff and class members with all second 30-minute meal periods to which they were entitled even though, on information and belief, they were required to clock out.  Also, as stated above, Plaintiff and class members were required to perform work off-the-clock before and after their shifts by performing pre-shift duties and/or completing tasks after they clocked out.

70.     Defendants did not pay at least minimum wages for all hours worked by Plaintiff and class members.  To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours Plaintiff and class members worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Accordingly, Defendants regularly failed to pay at least minimum wages to Plaintiff and class members for all of the hours they worked.

71.     Defendants' failure to pay Plaintiff and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Pursuant to California Labor Code section 1194.2, Plaintiff and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**THIRD CAUSE OF ACTION**

**Violations of California Labor Code, §§ 226.7, 512(a), and 1198—Meal Period Violations**

**(Against all Defendants)**

72.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

73.     At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (Cal. 2012).

74.     At all relevant times herein set forth, California Labor Code section 226.7 and 512(a), and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

75.     At all relevant times herein set forth, Labor Code sections 226.7 and 512(a), 1198 and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

76.     First, at all relevant times, as stated above, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their locations while simultaneously assigning demanding workloads, which had the combined effect of preventing Plaintiff and class members from taking all timely, uninterrupted meal periods to which they were entitled.  Additionally, Defendants had no policy and/or practice of scheduling meal

periods for Plaintiff and class members.  As a result of Defendants' policies and/or practices, Plaintiff and class members had to work through some or all of their meal periods, have their meal periods interrupted to return to work, and/or wait extended periods of time before taking meal periods.  For example, Plaintiff was required to continue performing his duties during his meal periods in order to meet deadlines two (2) to four (4) times per week.  Plaintiff also had his meal periods interrupted by his work and, as a result, took shortened meal periods.

77.    Second, for the same reasons set forth above, Plaintiff and class members were not provided with timely meal periods during their employment.  For example, Plaintiff and class members did not receive timely meal periods and were required to work past their first five (5) hours of work if a printing machine jammed or if a full order was not yet loaded onto a delivery truck.  On information and belief, Defendants' management routinely clocked Plaintiff and class members out for a full 30 minutes even when meal breaks were short and/or interrupted, or otherwise later altered records to show that full 30-minute breaks had been taken.

78.    Third, Defendants implemented a company-wide policy of requiring all employees, including Plaintiff and class members, to sign blanket Meal Period Waivers. Defendants then took the position that employees working six (6) hour shifts had waived their rights to take a 30-minute meal period on these particular shifts, for the entirety of their employment.  Defendants similarly took the position that employees working in excess of ten (10) hours per day, but no more than twelve (12), waived their right to a second 30-minute meal period, for the entirety of their employment.  Defendants only permitted Plaintiff and class members to revoke the waiver by providing one day's advance written notice. Defendants' imposition of the burden on employees to revoke the Meal Period Waiver in writing and one day in advance of their shift discouraged and prevented Plaintiff and class members from taking meal periods.  Defendants' presumption that second meal periods would not be provided for shifts in excess of ten (10) hours but less than twelve (12) hours due to blanket second meal period waivers discouraged Plaintiff and class members from taking second meal periods.

79.    In addition, an employer's obligation to provide a meal break is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay. *Id*. (citing Cal. Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)).

80.    That Defendants require employees sign blanket Meal Waivers in advance (as opposed to on a specific workday) renders them invalid and unenforceable, because Defendants' obligation to provide employees with meal breaks does not arise until it has employed them for a full five (5) hours.

81.    Fourth, Defendants did not provide Plaintiff and class members with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.  Plaintiff worked 10 or more hour shifts and, at times, up to twelve (12) or more hours in a shift without being permitted or authorized to take a second 30-minute meal period.

82.    Moreover, upon information and belief, Defendants engaged in a systematic, company-wide practice and/or policy of not paying meal period premiums for Plaintiff and class members, regardless of whether they were able to take a compliant meal break, in violation of the applicable IWC Wage Order and Labor Code sections 226.7 and 512(a).  As a result, Defendants failed to provide Plaintiff and class members compliant meal periods in violation of California Labor Code sections 226.7 and 512 and failed to pay the full meal period premiums due.

83.    Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

///

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7 and 1198—Rest Break Violations**

**(Against all Defendants)**

84.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

85.     At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7 and 1198 were applicable to Plaintiff's and class members' employment with Defendants.

86.     At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

87.     At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  To comply with its obligation to provide rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).  Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiff and class members are entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each work day that a required rest period was not authorized or permitted.

88.     As with meal periods, Defendants' company-wide policy and practice of understaffing while simultaneously assigning demanding workloads, prevented Plaintiff and class members from being relieved of all duty in order to take compliant rest periods.

Furthermore, Defendants had a uniform policy of failing to schedule rest breaks. As a result, Plaintiff and class members missed their rest breaks, would be required to take them late, or would have their rest breaks interrupted. Plaintiff and class members were prevented from being relieved of all duty in order to take compliant rest periods and instead would be required to continue working.

89.    Plaintiff and class members worked shifts in excess of three and one-half (3 ½) hours, in excess of six (6) hours, and/or in excess or ten (10) hours without receiving all uninterrupted 10-minute rest periods to which they were entitled. During his employment, Plaintiff missed his first rest break an average of 1-2 times per week, and missed his second rest break an average of 4-5 times per week due to his heavy workload. Plaintiff never received his third rest breaks when he worked shifts in excess of ten (10) hours.

90.    Defendants have also engaged in a systematic, company-wide practice and/or policy of not paying rest period premiums owed when rest periods are not authorized or permitted. Thus, Defendants denied Plaintiff and class members rest periods and failed to pay them rest period premium wages due, in violation of Labor Code section 226.7 and the applicable IWC Wage Order.

91.    Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7 and 1198. Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the rest period was not authorized or permitted.

**FIFTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

92.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

93.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and

complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

94.    At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements. For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period, including overtime rates of pay; and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

95.    Because Defendants deducted time worked from Plaintiff's and Subclass members' wage statements and employment records for meal periods they did not actually receive, Defendants unlawfully deducted wages earned and meal period premiums that should have been paid.  Thus, Defendants did not furnish wage statements to Plaintiff and Subclass members containing the correct amount of gross wages earned (Labor Code § 226(a)(1)), accurate totals of the hours worked (Labor Code § 226(a)(2)), correct amount of net wages earned (Labor Code § 226(a)(5)), or accurate number of hours worked at each hourly rate (Labor Code § 226(a)(9).

96.    Moreover, in the event Defendants paid any meal break premium and/or rest break premium payments, Defendants failed to identify such payments on Plaintiff's and Subclass members' wage statements and employment records, and Defendants otherwise failed to provide information on the wage statements sufficient to identify how many premium payments were paid during each pay period, the specific dates worked giving rise to the premium payments owed, or to determine whether such premium payments adequately and/or accurately compensated Plaintiff and Subclass members for any and all premiums owed.

97.    The wage statement deficiencies also include, without limitation, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and

only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

98.    California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  At all relevant times, Defendants failed, on a company-wide basis, to keep records of meal period start and stop times for Plaintiff and Subclass members in violation of section 1198.

99.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…"  At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

100.    Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee.

**SIXTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201, 202, and 203 – Wages Not Timely Paid Upon**

**Termination**

**(Against all Defendants)**

101.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

102.    This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, and meal and rest period premium wages that were not timely paid to Plaintiff and those class members no longer employed by Defendants upon their termination.

103.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

104.    At all relevant times, Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

105.    Defendants' failure to pay Plaintiff and those class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

///

1

**SEVENTH CAUSE OF ACTION**

2

**Violation of California Labor Code § 2802 – Unpaid Business-Related Expenses**

3

**(Against all Defendants)**

4      106.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

5      and every allegation set forth above.

6      107.    At all times herein set forth, California Labor Code section 2802 provides that

7      an employer must reimburse employees for all necessary expenditures and losses incurred by

8      the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is

9      to prevent employers from passing off their cost of doing business and operating expenses on

10     to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144

11     (2014).

12     108.    During the relevant time period, Defendants, on a company-wide basis,

13     mandated that Plaintiff and class members purchase special safety shoes such as steel-toed

14     boots, which they were required to wear while at work.  During his employment, Plaintiff

15     purchased steel-toed boots to wear inside the facility, totaling approximately $202, but was

16     not reimbursed for these costs.

17     109.    Defendants knew, or should have known, that Plaintiff and class members did

18     not earn at least two (2) times the minimum wage such that they could be required to provide

19     and maintain tools and equipment customarily required by the trade.

20     110.    Defendants could have provided Plaintiff and class members with the actual

21     tools required for use on the job, including steel-toed boots, or provided reimbursement for

22     these expenses.  Instead, Defendants passed these costs off on to Plaintiff and class members.

23     Defendants have, and continue to have, a company-wide policy and/or practice of not

24     reimbursing employees for expenses necessarily incurred.

25     111.    Defendants' company-wide policy and/or practice of passing on their operating

26     costs to Plaintiff and class members by requiring that they purchase steel-toed boots, violates

27     California Labor Code section 2802.  Defendants have intentionally and willfully failed to

28     fully reimburse Plaintiff and other class members for necessary business-related expenses and

1  costs.

2       112.   Plaintiff and class members are entitled to recover from Defendants their

3  business-related expenses incurred during the course and scope of their employment, plus

4  interest.

5  **EIGHTH CAUSE OF ACTION**

6  **Violation of California Labor Code §§ 551, 552, and 558 – Failure to Provide One Day's**

7  **Rest in Seven**

8  **(Against all Defendants)**

9       113.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

10  and every allegation set forth above.

11       114.   At all relevant times herein, California Labor Code section 551 provides that

12  every person employed in any occupation of labor is entitled to one day's rest in seven.

13  Additionally, California Labor Code section 552 prohibits employers from requiring

14  employees to work more than six consecutive days without a day of rest.

15       115.   At all relevant times herein set forth, California Labor Code section 556

16  exempts an employer from the day-of-rest requirement when the total hours worked by an

17  employee do not exceed 30 hours in any week or six hours in any one day thereof.

18       116.   Labor Code section 558 (a) provides "[a]ny employer or other person acting on

19  behalf of an employer who violates, or causes to be violated, a section of this chapter or any

20  provision regulating hours and days of work in any order of the Industrial Welfare

21  Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty

22  dollars ($50) for each underpaid employee for each pay period for which the employee was

23  underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each

24  subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay

25  period for which the employee was underpaid in addition to an amount sufficient to recover

26  underpaid wages."  Labor Code section 558(c) provides "[t]he civil penalties provided for in

27  this section are in addition to any other civil or criminal penalty provided by law."

28       117.   During the relevant time period, Defendants sometimes scheduled Plaintiff and

1   class members to work eight (8) or more hours per day and seven (7) consecutive days in a

2   workweek.  Because Plaintiff and class members worked over 30 hours per week and over six

3   (6) hours per day in a workweek, they were not exempt from the day-of-rest requirement.  To

4   the extent that Plaintiff and class members may have signed purported waivers of their right to

5   a day's rest in seven, such waivers are invalid.

6         118.   Thus, during the relevant time period, and in violation of Labor Code sections

7   551 and 552, Defendants willfully caused Plaintiff and class members to work more than six

8   days in seven.  Plaintiff and class members are therefore entitled to recover civil penalties

9   pursuant to Labor Code section 558.

10                   **NINTH CAUSE OF ACTION**

11       **For Civil Penalties Pursuant to California Labor Code §§ 2698, *et seq.***

12                 **(Against all Defendants)**

13         119.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

14   and every allegation set forth above.

15         120.   California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover

16   civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code

17   section 2699.5.  Section 2699.5 enumerates Labor Code sections 201, 202, 203, 204, 226(a),

18   226.7, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, and 2802.  Labor Code

19   section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties

20   for violations of those Labor Code sections not found in section 2699.5, including sections

21   1182.12, 6401, and 6403.

22         121.   Defendants' conduct, as alleged herein, violates numerous sections of the

23   California Labor Code, including, but not limited to, the following:

24            (a)   Violation of Labor Code sections 510, 1198, and the applicable IWC

25                   wage order for Defendants' failure to compensate Plaintiff and other

26                   aggrieved employees with all required overtime pay, as alleged herein;

27            (b)   Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, 1198,

28                   and the applicable IWC wage order for Defendants' failure to

1    compensate Plaintiff and other aggrieved employees with at least

2    minimum wages for all hours worked as alleged herein;

3    (c)    Violation of Labor Code sections 226.7, 512, 1198, and the applicable

4    IWC wage order for Defendants' failure to provide Plaintiff and other

5    aggrieved employees with meal and/or rest periods, as alleged herein;

6    (d)    Violation of Labor Code sections 226(a), 1198, and the applicable IWC

7    wage order for failure to provide accurate and complete wage statements

8    to Plaintiff and other aggrieved employees, as alleged herein;

9    (e)    Violations of Labor Code sections 1174(d), 1198, and the applicable

10    IWC wage order for failure to maintain payroll records as alleged

11    herein;

12    (f)    Violation of Labor Code section 204 for failure to pay all earned wages

13    during employment as set forth below;

14    (g)    Violation of Labor Code sections 201, 202, and 203 for failure to pay all

15    earned wages upon termination as alleged herein;

16    (h)    Violation of Labor Code section 2802 for failure to reimburse Plaintiff

17    and other aggrieved employees for all business expenses necessarily

18    incurred, as alleged herein;

19    (i)    Violation of Labor Code sections 551 and 552 for failure to provide one

20    day's rest in seven, as alleged herein; and

21    (j)    Violation of Labor Code sections 6401 and 6403 for failure to provide

22    personal protective equipment, as set forth below.

23    122.    At all relevant times herein set forth, California Labor Code section 204

24    requires that all wages earned by any person in any employment between the 1st and the 15th

25    days, inclusive, of any calendar month, other than those wages due upon termination of an

26    employee, are due and payable between the 16th and the 26th day of the month during which

27    the labor was performed.  Labor Code section 204 further provides that all wages earned by

28    any person in any employment between the 16th and the last day, inclusive, of any calendar

month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

123.    At all relevant times herein, California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all relevant times herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

124.    During the relevant time period, Defendants willfully failed to pay Plaintiff and other aggrieved employees all wages due including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within the time limitations specified by California Labor Code section 204.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 210 and/or 2699(a), (f), and (g).

125.    At all relevant times herein, California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy.  California Labor Code Section 6401 further provides that an employer must do everything reasonably necessary to protect the life, safety and health of its employees.  California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

126.    Defendants, on a company-wide basis, failed to provide Plaintiff and other aggrieved employees with personal protective equipment, such as steel-toed boots, to keep them safe in the workplace, including printing facilities.  Despite the fact that Defendants required employees to wear certain personal protective equipment, including steel-toed boots, Defendants failed to provide such reasonably necessary equipment to Plaintiff and other aggrieved employees to keep them safe.

127.   Thus, Defendants' failure to provide Plaintiff and other aggrieved employees with basic personal protective equipment for the workplace violates Labor Code sections 6401 and 6403.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 210 and/or 2699(a), (f), and (g).

**TENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, et seq. –**

**Unlawful Business Practices**

**(Against all Defendants)**

128.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

129.   Defendants are a "person" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies and/or associations.

130.   Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

131.   Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq*.

132.   A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law.  In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

(a)   Requiring non-exempt employees, including Plaintiff and class members, to work overtime without paying them proper compensation in violation of California Labor Code sections 510 and 1198 and the applicable IWC Order, as alleged herein;

(b)     Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 and the applicable IWC Order, as alleged herein;

(c)     Failing to provide uninterrupted meal and rest periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a), 1198, and the applicable IWC Order, as alleged herein;

(d)     Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), 1198, and the applicable IWC Order, as alleged herein;

(e)     Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204 and the applicable IWC Order, as set forth below;

(f)     Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein;

(g)     Failing to provide one day's rest in seven to Plaintiff and class members in violation of California Labor Code sections 551 and 552, as alleged herein; and

(h)     Failing to provide Plaintiff and class members with personal protective equipment in violation of California Labor Code sections 6401 and 6403, as set forth below.

133.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

134.    At all times relevant herein, Labor Code section 204 provides that all wages

earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

135.    At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

136.    At all relevant times herein, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within the time periods specified by California Labor Code section 204.

137.    At all relevant times herein, California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy.  California Labor Code Section 6401 further provides that an employer must do everything reasonably necessary to protect the life, safety and health of its employees.  California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

138.    Defendants, on a company-wide basis, failed to provide Plaintiff and class members with personal protective equipment, such as steel-toed boots, to keep them safe in the workplace, including printing facilities.  Despite the fact that Defendants required employees to wear certain personal protective equipment, including steel-toed boots, Defendants failed to provide such reasonably necessary equipment to Plaintiff and class members to keep them safe.  Thus, Defendants' failure to provide Plaintiff and class members

with basic personal protective equipment for the workplace violates Labor Code sections 6401 and 6403.

139.    As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members suffered pecuniary loss because of Defendants' unlawful business acts and practices alleged herein.

140.    Pursuant to California Business & Professions Code sections 17200 *et seq.*, Plaintiff and class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

## ELEVENTH CAUSE OF ACTION

### Violation of California Business & Professions Code §§ 17200, et seq. –

### Unfair Business Practices

### (Against all Defendants)

141.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

142.    Defendants are a "person" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

143.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

144.    Defendants' activities, namely Defendants' company-wide practice and/or policy of not paying Plaintiff and class members all meal and rest period premium wages due

1  to them under Labor Code section 226.7, deprived Plaintiff and class members of the

2  compensation guarantee and enhanced enforcement implemented by section 226.7. The

3  statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to

4  compensate employees, and secondarily to shape employer conduct. *Safeway, Inc. v. Superior*

5  *Court*, 238 Cal. App. 4th 1138, 1149 (2015). The statutory benefits of section 226.7 were

6  guaranteed to Plaintiff and class members as part of their employment with Defendants, and

7  thus Defendants' practice and/or policy of denying these statutory benefits constitutes an

8  unfair business practice in violation of California Business & Professions Code sections

9  17200, *et seq.* (*Id.*)

10  145.    A violation of California Business & Professions Code sections 17200, *et seq.*

11  may be predicated on any unfair business practice. In the instant case, Defendants' policies

12  and practices have violated the spirit of California's meal and rest break laws and constitute

13  acts against the public policy behind these laws.

14  146.    Pursuant to California Business & Professions Code sections 17200 *et seq.*,

15  Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory

16  benefits implemented by section 226.7 withheld and retained by Defendants during a period

17  that commences four years prior to the filing of this complaint; a permanent injunction

18  requiring Defendants to pay all statutory benefits implemented by section 226.7 due to

19  Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil

20  Procedure section 1021.5 and other applicable laws; and an award of costs.

21  **REQUEST FOR JURY TRIAL**

22  Plaintiff requests a trial by jury.

23  **PRAYER FOR RELIEF**

24  Plaintiff, on behalf of all others similarly situated, prays for relief and judgment

25  against Defendants, jointly and severally, as follows:

26  1.    For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in

27  excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs. Plaintiff

28  reserves the right to amend their prayer for relief to seek a different amount.

**Class Certification**

2.    That this case be certified as a class action;

3.    That Plaintiff be appointed as the representative of the Class and Subclass;

4.    That counsel for Plaintiff be appointed as class counsel.

**As to the First Cause of Action**

5.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due to Plaintiff and class members;

6.    For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7.    For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

8.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Second Cause of Action**

10.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 by willfully failing to pay minimum wages to Plaintiff and class members;

11.    For general unpaid wages and such general and special damages as may be appropriate;

12.    For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14.    For liquidated damages pursuant to California Labor Code section 1194.2; and

15.    For such other and further relief as the Court may deem equitable and

1  appropriate.

2  **As to the Third Cause of Action**

3  16.    That the Court declare, adjudge, and decree that Defendants violated California

4  Labor Code sections 226.7, 512(a), and 1198 and applicable IWC Wage Order(s) by willfully

5  failing to provide all meal periods to Plaintiff and class members;

6  17.    That the Court make an award to the Plaintiff and class members of one (1)

7  hour of pay at each employee's regular rate of pay for each workday that a meal period was

8  not provided;

9  18.    For all actual, consequential, and incidental losses and damages, according to

10  proof;

11  19.    For premiums pursuant to California Labor Code section 226.7(b);

12  20.    For pre-judgment interest on any unpaid meal period premiums from the date

13  such amounts were due, or as otherwise provided by law;

14  21.    For attorneys' fees pursuant to California Code of Civil Procedure section

15  1021.5, or as otherwise provided by law; and

16  22.    For such other and further relief as the Court may deem equitable and

17  appropriate.

18  **As to the Fourth Cause of Action**

19  23.    That the Court declare, adjudge and decree that Defendants violated California

20  Labor Code sections 226.7 and 1198 and applicable IWC Wage Orders by willfully failing to

21  provide all rest periods to Plaintiff and class members;

22  24.    That the Court make an award to the Plaintiff and class members of one (l) hour

23  of pay at each employee's regular rate of pay for each workday that a rest period was not

24  provided;

25  25.    For all actual, consequential, and incidental losses and damages, according to

26  proof;

27  26.    For premiums pursuant to California Labor Code section 226.7(b);

28  27.    For pre-judgment interest on any unpaid rest period premiums from the date

1   such amounts were due, or as otherwise provided by law;

2        28.    For attorneys' fees pursuant to California Code of Civil Procedure section

3   1021.5, or as otherwise provided by law; and

4        29.    For such other and further relief as the Court may deem equitable and

5   appropriate.

6                    **As to the Fifth Cause of Action**

7        30.    That the Court declare, adjudge and decree that Defendants violated the

8   recordkeeping provisions of California Labor Code section 226(a) and applicable IWC Wage

9   Orders as to Plaintiff and Subclass members, and willfully failed to provide accurate itemized

10  wage statements thereto;

11       31.    For all actual, consequential and incidental losses and damages, according to

12  proof;

13       32.    For injunctive relief pursuant to California Labor Code section 226(h);

14       33.    For statutory penalties pursuant to California Labor Code section 226(e);

15       34.    For attorneys' fees and costs pursuant to California Labor Code section

16  226(e)(1); and

17       35.    For such other and further relief as the Court may deem equitable and

18  appropriate.

19                    **As to the Sixth Cause of Action**

20       36.    That the Court declare, adjudge and decree that Defendants violated California

21  Labor Code sections 201, 202, and 203 by willfully failing to pay overtime wages, minimum

22  wages, and meal and rest period premiums owed at the time of termination of the employment

23  of Plaintiff and other terminated class members;

24       37.    For all actual, consequential and incidental losses and damages, according to

25  proof;

26       38.    For waiting time penalties according to proof pursuant to California Labor

27  Code section 203 for all employees who have left Defendants' employ;

28       39.    For pre-judgment interest on any unpaid wages from the date such amounts

1  were due, or as otherwise provided by law;

2      40.    For attorneys' fees pursuant to California Code of Civil Procedure section

3  1021.5, or as otherwise provided by law; and

4      41.    For such other and further relief as the Court may deem equitable and

5  appropriate.

6                    **As to the Seventh Cause of Action**

7      42.    That the Court declare, adjudge and decree that Defendants violated California

8  Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-

9  related expenses and costs incurred by Plaintiff and class members;

10     43.    For unpaid business-related expenses and such general and special damages as

11 may be appropriate;

12     44.    For pre-judgment interest on any unpaid business-related expenses from the

13 date such amounts were due, or as otherwise provided by law;

14     45.    For all actual, consequential, and incidental losses and damages, according to

15 proof;

16     46.    For attorneys' fees and costs pursuant to California Labor Code

17 section 2802(c), or as otherwise provided by law; and

18     47.    For such other and further relief as the Court may deem equitable and

19 appropriate.

20                    **As to the Eighth Cause of Action**

21     48.    That the Court declare, adjudge and decree that Defendants violated California

22 Labor Code sections 551 and 552 by failing to provide a day's rest in seven; and that

23 Defendants committed said violations of the Labor Code against Plaintiff and class members;

24     49.    For civil penalties for conduct occurring any time between one year prior to the

25 filing of this complaint and judgment, pursuant to California Labor Code section 558;

26     50.    For pre-judgment and post-judgment interest as provided by law; and

27     51.    For such other and further relief as the Court may deem equitable and

28 appropriate.

**As to the Ninth Cause of Action**

52.     That the Court declare, adjudge and decree that Defendants violated the following California Labor Code provisions as to Plaintiff and/or other aggrieved employees: 510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512 and 1198 (by failing to provide all meal and rest periods); 226(a), 1174(d) and 1198 (by failing to provide accurate wage statements and maintain accurate payroll records); 204 (by failing timely to pay all earned wages during employment); 201, 202, 203 (by failing timely to pay all earned wages upon termination); 2802 (by failing to reimburse business expenses); 551 and 552 (by failing to provide one day's rest in seven); 6401 and 6403 (by failing to provide personal protective equipment);

53.     For civil penalties pursuant to California Labor Code sections 210, 226.3, 256, 558, 1174.5, 1197.1, 2699(a) and/or 2699(a), (f) and (g), for violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403;

54.     For attorneys' fees and costs pursuant to California Labor Code section 2699(g)(1), and any and all other relevant statutes, for Defendants' violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403;

55.     For pre-judgment and post-judgment interest as provided by law; and

56.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Tenth Cause of Action**

57.     That the Court declare, adjudge and decree that Defendants conduct of failing to provide Plaintiff and class members all overtime wages due to them, failing to provide Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and class members all meal and rest periods, failing to provide Plaintiff and class members accurate and complete wage statements, failing to maintain accurate payroll records for

1    Plaintiff and class members, failing to timely pay Plaintiff and class members all earned

2    wages during employment, failing to reimburse Plaintiff and class members for business-

3    related expenses, failing to provide one day's rest in seven, and failing to provide Plaintiff and

4    class members with personal protective equipment, constitutes an unlawful business practice

5    in violation of California Business and Professions Code sections 17200, *et seq.*;

6        58.    For restitution of unpaid wages to Plaintiff and all class members and

7    prejudgment interest from the day such amounts were due and payable;

8        59.    For the appointment of a receiver to receive, manage and distribute any and all

9    funds disgorged from Defendants and determined to have been wrongfully acquired by

10   Defendants as a result of violations of California Business & Professions Code sections 17200

11   *et seq.*;

12       60.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

13   California Code of Civil Procedure section 1021.5; and

14       61.    For such other and further relief as the Court may deem equitable and

15   appropriate.

16                          **As to the Eleventh Cause of Action**

17       62.    That the Court declare, adjudge and decree that Defendants' conduct of denying

18   Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes

19   an unfair business practice in violation of California Business and Professions Code sections

20   17200, *et seq.*;

21       63.    For restitution of the statutory benefits under section 226.7 unfairly withheld

22   from Plaintiff and class members and prejudgment interest from the day such amounts were

23   due and payable;

24       64.    For the appointment of a receiver to receive, manage and distribute any and all

25   funds disgorged from Defendants and determined to have been wrongfully acquired by

26   Defendants as a result of violations of California Business & Professions Code sections 17200

27   *et seq.*;

28       65.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

1    California Code of Civil Procedure section 1021.5;

2          66.      For pre-judgment and post-judgment interest as provided by law; and

3          67.      For such other and further relief as the Court may deem equitable and

4    appropriate.

5

6    Dated:  September 23, 2019               Respectfully submitted,
                                             Capstone Law APC

7

8                                    By:     _Bevin Allen Pike_____
                                             Bevin Allen Pike
9                                            Orlando Villalba

10                                           Attorneys for Plaintiff Paul Clark

Exhibit 1

Exhibit 1

# Capstone
## LAW APC

1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

MAO SHIOKURA
310.712.8030 Direct
Mao.Shiokura@capstonelawyers.com

December 7, 2018

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/198)

Subject:       *Paul Clark v. QG Printing II, LLC, et al.*

Dear PAGA Administrator:

This office represents Paul Clark in connection with his claims under the California Labor Code.  Mr. Clark was an employee of QG PRINTING II, LLC and/or QUAD GRAPHICS, INC. (collectively "QG").

The employers may be contacted directly at the addresses below:

QG PRINTING II, LLC
N61 W23044 HARRY'S WAY
SUSSEX WI 53089

QUAD GRAPHICS, INC.
N61 W23044 HARRY'S WAY
SUSSEX WI 53089

Mr. Clark intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA").  Mr. Clark seeks relief on behalf of himself, the State of California, and other persons who were employed by QG in California as non-exempt, hourly-paid employees and who received at least one wage statement ("aggrieved employees").  This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

QG employed Mr. Clark as a non-exempt, hourly-paid General Worker from approximately June 2017 to April 2018.  During his employment, Mr. Clark worked for QG at their Merced, California facility.  Mr. Clark worked approximately twelve (12) hours per day, five (5) days per week, and approximately sixty (60) hours per week.  His job duties included, without limitation, running the stacker machine, setting up and cleaning the press, stacking product, and cleaning the press area.

1

QG committed one or more of the following Labor Code violations against Mr. Clark, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

## QG's Company-Wide and Uniform Payroll and HR Practices

QG is a leading provider of print and media solutions to clients across the globe. In California, QG operates four printing facilities, employing approximately 1,000 workers within the state, and provides printing services for magazines, catalogs, and retail advertising inserts. QG PRINTING II, LLC is a Connecticut limited liability company and QUAD GRAPHICS, INC. is a Wisconsin corporation. Both of their principal places of business and headquarters are located in Sussex, Wisconsin. Upon information and belief, QG maintains a centralized Human Resources (HR) department at its corporate headquarters in Sussex, Wisconsin, which implements uniform, standardized policies and practices affecting all of its non-exempt, hourly-paid employees in California, including Mr. Clark and other aggrieved employees. At all relevant times, QG issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly-paid employees in California, including Mr. Clark and other aggrieved employees, regardless of their store location.

Upon information and belief, QG maintains a centralized Payroll department at their corporate headquarters in Sussex, Wisconsin, which processes payroll for all non-exempt, hourly-paid employees working for QG in California, including Mr. Clark and other aggrieved employees. Further, QG issues the same uniform and formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their location, position, or manner in which each employee's employment ended. QG's centralized Payroll department processed payroll for non-exempt, hourly-paid employees in the same manner throughout California. In other words, QG utilized the same methods and formulas when calculating wages due to Mr. Clark and other aggrieved employees in California.

## Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including non-discretionary bonuses and incentive pay.

---

[1] These facts, theories, and claims are based on Mr. Clark's experience and counsel's review of those records currently available relating to Mr. Clark's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Mr. Clark reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

QG willfully failed to pay all overtime wages owed to Mr. Clark and other aggrieved employees. During the relevant time period, Mr. Clark and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant time period, QG had, and continues to have, a company-wide policy of failing to implement any policies to authorize and permit employees to take compliant meal periods and, instead, engaged in a practice of discouraging and impeding employees from taking meal periods by assigning them a heavy workload and understaffing their printing facilities. Mr. Clark and other aggrieved employees were expected to meet certain deadlines for print jobs, as these were scheduled on a time-sensitive basis.

Second, QG, on a company-wide basis, failed to schedule meal periods even though it is aware that employees are entitled to such meal periods. As a result of this company-wide understaffing of its facilities and failure to schedule meal periods, Mr. Clark and other aggrieved employees were not always permitted and authorized to take uninterrupted 30-minute meal periods during shifts to which they were entitled to receive a meal period. For example, Mr. Clark and other aggrieved employees regularly worked through meal periods and had meal periods interrupted by supervisors and by work to meet expected targets.

Further, at all relevant times, QG had no policy for scheduling second meal periods and no practice of permitting Mr. Clark and other aggrieved employees to take second 30-minute meal periods. As a result, on days that Mr. Clark and other aggrieved employees worked in excess of ten (10) hours, they were not provided with second 30-minute meal periods, but, on information and belief, were required to clock out. Mr. Clark and other aggrieved employees did not sign valid meal break waivers on days that they were entitled to meal periods but were not relieved of all duties.

Further, QG had, and continues to have, a company-wide policy and/or practice requiring Mr. Clark and other aggrieved employees to know their printer assignments before going down to the floor. For example, Mr. Clark arrived for his shift thirty (30) minutes before his scheduled start time so he could check the assignment board, prepare his tools, and speak to employees who worked the previous shift to find out if there were any ongoing issues. Similarly, other aggrieved employees arrived to their shifts 15-20 minutes before their scheduled start times to check the assignment board and check in with employees who worked the previous shift. It was not possible for Mr. Clark and other aggrieved employees to complete all these tasks on the clock because the timeclock would not permit Mr. Clark and other aggrieved employees to clock in any earlier than five (5) minutes before their scheduled shift start times, so they would work off-the-clock to start these duties. Additionally, due to understaffing, Mr. Clark was required to stay after his scheduled shift to complete tasks in order to meet particular deadlines. QG did not compensate Mr. Clark and other aggrieved employees for the time they spent off-the-clock performing these tasks.

QG knew or should have known that as a result of these company-wide practices and/or policies, Mr. Clark and other aggrieved employees were performing some of assigned duties off-the-clock and/or during unpaid meal periods, and thereby performing work for which they were not paid. QG also knew, or should have known, that it did not compensate Mr. Clark and other aggrieved employees for this off-the-clock work. Because Mr. Clark and other aggrieved employees regularly worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, much of this off-the-clock work performed during unpaid meal periods and before and after shifts qualified for overtime premium

pay. Therefore, Mr. Clark and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked. QG's failure to pay Mr. Clark and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.

Furthermore, QG did not pay other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, QG paid other aggrieved employees shift differential pay, nondiscretionary bonuses, and/or incentive pay. However, in violation of the California Labor Code, QG failed to incorporate all remunerations, including shift differential pay, nondiscretionary bonuses, and/or incentive pay, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when other aggrieved employees worked overtime and received nondiscretionary bonuses and/or incentive pay, QG failed to pay all overtime wages by paying a lower overtime rate than required.

Mr. Clark and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1194, and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined by the applicable Wage Order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

As stated above, due to QG's company-wide scheduling practices and policies, Mr. Clark and other aggrieved employees were forced to forego meal periods and/or have their meal periods interrupted by work, and were not relieved of all duties for unpaid meal periods, in order to meet their deadlines and handle their workloads. QG did not pay minimum wages for meal periods Mr. Clark and other aggrieved employees worked through that qualified for overtime premium payment. And, QG did not pay Mr. Clark and other aggrieved employees for the time they continued to perform their duties during their meal periods.

As also stated above, QG had no policy and/or practice for scheduling second meal periods for employees or for authorizing and permitting Mr. Clark and other aggrieved employees to take second 30-minute meal periods on days they worked in excess of ten (10) hours in one day. As a result, QG did not provide Mr. Clark and other aggrieved employees with all second 30-minute meal periods to which they were entitled. In addition, as stated above, Mr. Clark and other aggrieved employees were required to perform work off-the-clock before and after their shifts by performing pre-shift duties and/or completing tasks after they clocked out.

QG did not pay minimum wages for meal periods and other off-the-clock hours that Mr. Clark and other aggrieved employees worked through that qualified for overtime premium payment. To the extent that these off-the-clock hours did not qualify for overtime premium payment, QG did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly, QG regularly failed to pay at least minimum wages to Mr. Clark and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

4

Mr. Clark and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a) and 1198 and the applicable IWC Wage Order require employers to provide meal and rest breaks and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

First, as stated above, QG had, and continues to have, a company-wide policy and/or practice of short-staffing their locations while simultaneously assigning demanding workloads, which had the combined effect of preventing Mr. Clark and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled. Additionally, QG had no policy and/or practice of scheduling meal periods for Mr. Clark and other aggrieved employees. As a result of QG's policies and/or practices, Mr. Clark and other aggrieved employees had to work through some or all of their meal periods, have their meal periods interrupted to return to work, and/or wait extended periods of time before taking meal periods. For example, Mr. Clark and other aggrieved employees were required to continue performing their duties during their meal periods in order to meet deadlines two (2) to four (4) times per week. Mr. Clark and other aggrieved employees also had their meal periods interrupted by their work and, as a result, took shortened meal periods.

Second, for the same reasons set forth above, Mr. Clark and other aggrieved employees were not provided with timely meal periods during their employment. For example, Mr. Clark and other aggrieved employees did not receive timely meal periods and were required to work past their first five (5) hours of work if a printing machine jammed or if a full order was not yet loaded onto a delivery truck. On information and belief, QG's management routinely clocked Mr. Clark and other aggrieved employees out for a full 30 minutes even when meal breaks were short and/or interrupted, or otherwise later altered records to show that full 30-minute breaks had been taken.

Third, QG implemented a company-wide policy of requiring all employees, including Mr. Clark and other aggrieved employees, to sign blanket Meal Period Waivers. QG then took the position that employees working six (6) hour shifts had waived their rights to take a 30-minute meal period on these particular shifts, for the entirety of their employment. QG similarly took the position that employees working in excess of ten (10) hours per day, but no more than twelve (12), waived their right to a second 30-minute meal period, for the entirety of their employment. QG only permitted

5

Mr. Clark and other aggrieved employees to revoke the waiver by providing one day's advance written notice.

QG's company-wide use of blanket meal waivers signed at or near the time of hire and imposition of the burden on employees to revoke the Meal Period Waiver in writing and one day in advance of their shift discouraged and prevented Mr. Clark and other aggrieved employees from taking all meal periods to which they were entitled. And, QG's presumption that second meal periods would not be provided for shifts in excess of ten (10) hours but less than twelve (12) hours due to blanket second meal period waivers discouraged Mr. Clark and other aggrieved employees from taking second meal periods.

What's more, an employer's obligation to provide a meal break is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay. *Id.* (citing Cal. Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)).

Further, under Labor Code section 512(a) and the applicable IWC Wage Order, employees may waive their second meal breaks only if they took their first meal break. That QG requires aggrieved employees to sign Meal Waivers simultaneously at or near their time of hire (as opposed to on a specific work day) renders them invalid and unenforceable, because QG's obligation to provide aggrieved employees with meal breaks did not arise until it had employed them for a full five (5) hours.

Fourth, QG did not provide Mr. Clark and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. Mr. Clark worked ten (10) or more hour shifts and, at times, up to twelve (12) or more hours in a shift without being permitted or authorized to take a second 30-minute meal period.

At all times herein mentioned, QG knew or should have known that as a result of its policies, including understaffing, heavy workload, and failure to schedule meal periods, that Mr. Clark and other aggrieved employees have been required to perform some of their assigned duties during meal periods. As a result, Mr. Clark and other aggrieved employees had to work through part or all of their meal periods. QG further knew or should have known that they did not pay Mr. Clark and other aggrieved employees meal period premium wages when they were missed, late, short, and/or interrupted. As stated above, Mr. Clark and other aggrieved employees did not sign valid meal break waivers on days that they were entitled to meal periods and were not relieved of all duties.

QG also has engaged in a company-wide practice and/or policy of not paying meal period premiums owed when compliant meal periods are not provided. Because of this practice and/or policy, Mr. Clark and other aggrieved employees have not received premium pay for missed meal periods. Alternatively, to the extent that QG did pay meal period premium wages to other aggrieved employees, it did so at the incorrect rates. Because QG did not properly calculate other aggrieved

employees' regular rates of pay by including all remunerations, such as shift differential pay, incentive pay, and/or nondiscretionary bonuses, any premiums paid for meal period violations were also paid at an incorrect rate and resulted in an underpayment of meal period premium wages.

Accordingly, QG failed to provide all meal periods in violation of California Labor Code sections 226.7, 512, and 1198. Mr. Clark and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226.7 and 1198 – Failure to Provide Rest Periods

California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to provide rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

As with meal periods, QG's company-wide policy and practice of understaffing while simultaneously assigning demanding workloads, prevented Mr. Clark and other aggrieved employees from being relieved of all duty in order to take compliant rest periods. Furthermore, QG had a uniform policy of failing to schedule rest breaks. As a result, Mr. Clark and other aggrieved employees missed their rest breaks, would be required to take them late, or would have their rest breaks interrupted. Mr. Clark and other aggrieved employees were prevented from being relieved of all duty in order to take compliant rest periods and instead would be required to continue working. For example, throughout his employment, Mr. Clark missed his first rest break an average of 1-2 times per week, and missed his second rest break an average of 4-5 times per week due to his heavy workload. Mr. Clark also never received his third rest breaks when he worked shifts in excess of ten (10) hours.

QG also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not provided. Because of this practice and/or policy, Mr. Clark and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that QG did pay rest period premium wages to other aggrieved employees, it did so at the incorrect rates. Because QG did not properly calculate other aggrieved employees' regular rates of pay by including all remunerations, such as shift differential pay, incentive pay, and/or nondiscretionary bonuses, any premiums paid for rest period violations were also paid at an incorrect rate and resulted in an underpayment of rest period premium wages.

Accordingly, QG failed to provide all rest periods in violation of California Labor Code sections 226.7 and 1198. Mr. Clark and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. QG has not provided Mr. Clark and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, QG has knowingly and intentionally provided Mr. Clark and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, QG issued uniform wage statements to Mr. Clark and other aggrieved employees that fail to correctly list: gross wages earned; net wages earned; all applicable hourly rates in effect during the pay period, including overtime rates of pay; and the corresponding number of hours worked at each hourly rate. Specifically, QG violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

Because QG deducted time from Mr. Clark's and other aggrieved employees' records for meal periods that were missed and/or interrupted (and therefore time for which they should have been paid) and did not record the time spent Mr. Clark and other aggrieved employees spent working off-the-clock, QG did not list the correct amount of gross wages and net wages earned by Mr. Clark and other aggrieved employees in compliance with section 226(a)(1) and 226(a)(5), respectively. For the same reason, QG failed to accurately list the total number of the hours worked by Mr. Clark and other aggrieved employees in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate in violation of section 226(a)(9).

Further, because QG did not calculate other aggrieved employees' regular rate of pay correctly for purposes of paying overtime and meal and rest period premium wages, QG did not list the correct amount of gross wages earned by other aggrieved employees in compliance with section 226(a)(1) and did not list the correct amount of net wages earned by other aggrieved employees in violation of section 226(a)(5). QG also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for premium wages, in violation of section 226(a)(9).

The wage statement deficiencies also include, among other things: failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the correct name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

8

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…" Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), QG willfully failed to maintain accurate payroll records for Mr. Clark and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, QG failed, on a company-wide basis, to keep accurate records of meal period start and stop times for Mr. Clark and other aggrieved employees, in violation of section 1198. As stated, QG engaged in a company-wide practice and/or policy of falsifying Mr. Clark's and other aggrieved employees' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Mr. Clark and other aggrieved employees. Furthermore, in light of QG's failure to provide Mr. Clark and other aggrieved employees with second 30-minute meal periods to which they were entitled, QG kept no records of meal start and end times for second meal periods.

Because QG failed to provide the correct net and gross wages earned, total hours worked, and applicable rates of pay on wage statements, Mr. Clark and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full. Instead, Mr. Clark and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Mr. Clark and other aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226(e), 226.3, 1174.5, and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment</u>**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are

deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, QG failed to pay Mr. Clark and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Mr. Clark and aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

QG willfully failed to pay Mr. Clark and other aggrieved employees who are no longer employed by QG all their earned wages, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving QG's employ in violation of California Labor Code sections 201, 202, and 203.

Mr. Clark and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 551 and 552 – One Day's Rest in Seven**

California Labor Code section 551 provides that every person employed in any occupation of labor is entitled to one day's rest in seven. California Labor Code section 552 prohibits employers from requiring employees to work more than six consecutive days without a day of rest. California Labor Code section 556 exempts an employer from the day-of-rest requirement when the total hours worked by an employee do not exceed 30 hours in any week or six hours in any one day thereof.

QG sometimes scheduled other aggrieved employees to work eight (8) or more hours per day and seven (7) consecutive days in a workweek. Other aggrieved employees would be scheduled for fifteen (15) consecutive days of work. Because other aggrieved employees worked over 30 hours per week and over six (6) hours per day in a workweek, they were not exempt from the day-of-rest requirement. To the extent that other aggrieved employees signed purported waivers of their right to a day's rest in seven, such waivers are invalid.

Thus, QG caused other aggrieved employees to work more than six days in seven, in violation of Labor Code sections 551 and 552. Other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

10

**Violation of California Labor Code §§ 6401 and 6403 – Failure to Provide Personal Protective Equipment**

California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy. California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

QG, on a company-wide basis, failed to provide Mr. Clark and other aggrieved employees with personal protective equipment, such as steel-toed boots, to keep them safe in the workplace, including printing facilities. Despite the fact that QG required employees to wear certain personal protective equipment, including steel-toed boots, QG failed to provide such reasonably necessary equipment to Mr. Clark and other aggrieved employees to keep them safe.

QG's failure to provide Mr. Clark and other aggrieved employees with basic personal protective equipment for the workplace violates Labor Code sections 6401 and 6403. Mr. Clark and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(f)-(g).

**Violation of California Labor Code § 2802 – Unreimbursed Business Expenses**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

During the relevant time period, on a company-wide basis, QG mandated that Mr. Clark and other aggrieved employees purchase special safety shoes such as steel-toed boots, which they were required to wear while at work. During his employment, Mr. Clark purchased steel-toed boots to wear inside the facility, totaling approximately $202, but was not reimbursed for these costs. Other aggrieved employees also purchased steel-toed boots to wear inside the facility, but were not reimbursed for these costs.

QG had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred. QG could have provided Mr. Clark and other aggrieved employees with the actual tools for use on the job, including steel-toed boots, or reimbursed employees for their expenses. Instead, QG passed these operating costs off onto Mr. Clark and other aggrieved employees. At all relevant times, Mr. Clark did not earn at least two (2) times the minimum wage.

11

QG's policy and/or practice of passing its operating costs on to Mr. Clark and other aggrieved employees by requiring that they purchase steel-toed boots is in violation of California Labor Code section 2802. Mr. Clark and other aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." QG, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Mr. Clark's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Mr. Clark seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Mr. Clark, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against QG for violations of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

Therefore, on behalf of all aggrieved employees, Mr. Clark seeks all applicable penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Mao Shiokura
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Mao Shiokura

Copy: QG PRINTING II, LLC (via U.S. Certified Mail); QUAD GRAPHICS, INC. (via U.S. Certified Mail); Allison K. Pierce & Andrew H. Woo, LITTLER MENDELSON, P.C., 5200 North Palm Avenue, Suite 302, Fresno, California 93704-2225); Gregory G. Iskander, LITTLER MENDELSON, P.C., Treat Towers, 1255 Treat Boulevard, Suite 600, Walnut Creek, California 94597 (via U.S. Certified Mail)



USPS CERTIFIED MAIL
$007.83⁰
PITNEY BOWES
UNITED STATES POSTAGE
02 1P
0000066553
MAILED FROM ZIP CODE 900

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

QG PRINTING II LLC
N61 W23044 HARRY'S WAY
SUSSEX WI 53089

9590 9402 1512 5362 2747 05

2. Article Number (Transfer from service label)

7010 2780 0003 1943 2676

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

CERTIFIED MAIL

7010 2780 0003 1943 2676

QG PRINTING II LLC
N61 W23044 HARRY'S WAY
SUSSEX WI 53089

one
AW APC
Park East, Ste 1000
CA 90067

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 1.63 |
| Certified Fee | 3.45 |
| Return Receipt Fee (Endorsement Required) | 2.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.83 |

Postmark Here
Clark v. Q G
Printing II, LLC

Sent To
QG PRINTING II LLC
Street, Apt. No.; or PO Box No.  N61 W23044 HARRY'S WAY
City, State, ZIP+4  SUSSEX WI 53089

PS Form 3800, Au



PITNEY BOWES
$007.83⁰
02 1P
0000666553
MAILED FROM ZIP CODE 9006
UNITED STATES POSTAGE

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X                                     ☐ Agent
                                      ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

1. Article Addressed to:

Quad Graphics, Inc.
N61 W23044 HARRY'S WAY
SUSSEX WI 53089

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

9590 9402 1512 5362 2747 29

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number *(Transfer from service label)*

7010 2780 0003 1943 2713

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

---

CERTIFIED MAIL™

7010 2780 0003 1943 2713

QUAD GRAPHICS, INC.
N61 W23044 HARRY'S WAY
SUSSEX WI 53089

one
AW APC
/ Park East, Ste 1000
CA 90067

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage $ | 1.63 |
| Certified Fee | 3.45 |
| Return Receipt Fee (Endorsement Required) | 2.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees $ | 7.83 |

Postmark
Here
Clark V. Quad
Graphics, Inc.

Sent To
Quad Graphics, Inc.
Street, Apt. No.; or PO Box No.  N61 W23044 HARRY'S WAY
City, State, ZIP+4  SUSSEX WI 53089

PS Form 3800, Au

7010 2780 0003 1943 2713



UNITED STATES POSTAGE
PITNEY BOWES
$007.83⁰
02 1P
0000866553
MAILED FROM ZIP CODE 90067

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**1. Article Addressed to:**

LITTLER MENDELSON, P.C.
ALLISON K. PIERCE, Bar No. 252049
5200 NORTH PALM AVENUE, SUITE 302
FRESNO, CA 93704-2225



9590 9402 1512 5362 2741 25

**2. Article Number** *(Transfer from service label)*

7010 2780 0003 1943 2706

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

**3. Service Type**
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053            Domestic Return Receipt

---

CERTIFIED MAIL™

7010 2780 0003 1943 2706

LITTLER MENDELSON, P.C.
ALLISON K. PIERCE, Bar No. 252049
5200 NORTH PALM AVENUE, SUITE 302
FRESNO, CA 93704-2225

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ 1.63 | |
| Certified Fee | 3.45 | Postmark Here |
| Return Receipt Fee (Endorsement Required) | 2.75 | Clark v. Q6 |
| Restricted Delivery Fee (Endorsement Required) | | Printing II, LLC |
| Total Postage & Fees | $ 7.83 | |

Sent To
LITTLER MENDELSON, P.C.
Street, Apt. No.; or PO Box No.
ALLISON K. PIERCE, Bar No. 252049
City, State, ZIP+4
5200 NORTH PALM AVENUE, SUITE 302
FRESNO, CA 93704-2225

PS Form 3800, Au

7010 2780 0003 1943 2706

... one
...AW APC
y Park East, Ste 1000
CA 90067

UNITED STATES POSTAGE
PITNEY BOWES
$007.83⁰
02 1P
0000066553
MAILED FROM ZIP CODE 9006

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

LITTLER MENDELSON, P.C.
ANDREW H. WOO, Bar No. 261120
5200 NORTH PALM AVENUE, SUITE 302
FRESNO, CA 93704-2225

9590 9402 1511 5362 0858 21

2. Article Number (Transfer from service label)

7010 2780 0003 1943 2690

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

CERTIFIED MAIL™

7010 2780 0003 1943 2690

LITTLER MENDELSON, P.C.
ANDREW H. WOO, Bar No. 261120
5200 NORTH PALM AVENUE, SUITE 302
FRESNO, CA 93704-2225

---

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 1.63 |
| Certified Fee | 3.45 |
| Return Receipt Fee (Endorsement Required) | 2.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.83 |

Postmark Here
Clark v. QG
Printing II, LLC

Sent To    LITTLER MENDELSON, P.C.
ANDREW H. WOO, Bar No. 261120
Street, Apt. No.;
or PO Box No.    5200 NORTH PALM AVENUE, SUITE 302
City, State, ZIP+4    FRESNO, CA 93704-2225

7010 2780 0003 1943 2690

PS Form 3800, Au...

...one
...AW APC
...Park East, Ste 1000
...CA 90067

USPS POSTAGE
PITNEY BOWES
$007.83⁰
02 1P
0000666553
MAILED FROM ZIP CODE 900
UNITED STATES POSTAGE

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LITTLER MENDELSON, P.C.
GREGORY G. ISKANDER, Bar No. 200215
LITTLER MENDELSON, P.C.
TREAT TOWERS 1255 TREAT BLVD,
SUITE 600
WALNUT CREEK, CA 94597

9590 9402 1512 5362 2747 12

2. Article Number (Transfer from service label)

7010 2780 0003 1943 2683

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery over $500

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

CERTIFIED MAIL™

7010 2780 0003 1943 2683

LITTLER MENDELSON, P.C.
GREGORY G. ISKANDER, Bar No. 200215
LITTLER MENDELSON, P.C.
TREAT TOWERS 1255 TREAT BLVD, SUITE 600
WALNUT CREEK, CA 94597

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 1.63 |
| Certified Fee | 3.45 |
| Return Receipt Fee (Endorsement Required) | 2.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.83 |

Postmark Here
Clark v. QG
Printing II, LLC

Sent To
LITTLER MENDELSON, P.C.
GREGORY G. ISKANDER, Bar No. 200215
Street, Apt No.; or PO Box No. LITTLER MENDELSON, P.C.
TREAT TOWERS 1255 TREAT BLVD,
SUITE 600
City, State, ZIP+4 WALNUT CREEK, CA 94597

PS Form 3800, Au