**PIMENTEL LAW, P.C.**
Gabriel J. Pimentel, Esq. (SBN 265328)
GJP@PimentelLaw.com
30 N. Raymond Ave., Ste. 210
Pasadena, CA 91103
Tel: (626) 765-6505
Fax: (626) 628-3036

Attorney for Prospective Plaintiff-Intervenor,
ELITH CHRIS RAMOS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION**

PAUL CLARK, individually, and on behalf of other members of the general public similarly situated and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),

Plaintiff, and

ELITH CHRIS RAMOS, individually, and on behalf of others similarly situated and as aggrieved employees pursuant to the PAGA,

Prospective-Plaintiff Intervenor,

vs.

QG PRINTING II, LLC, a Connecticut limited liability company; QUAD /GRAPHICS, INC., a Wisconsin corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 1:18-cv-00899-AWI-EPG

**PROSPECTIVE PLAINTIFF-INTERVENOR ELITH CHRIS RAMOS'S REPLY TO PAUL CLARK'S OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**

Date: November 2, 2020
Time: 1:30 p.m.
Judge: Anthony W. Ishii
Courtroom: 2

Trial Date: None

## I. INTRODUCTION

Clark's Opposition begins by claiming that Ramos's Motion is not timely because he has known about the Clark action for 20 months. But the date the proposed intervenor learns of a lawsuit is not the starting point for determining the timeliness of intervention. *See Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013); *Legal Aid Soc. of Alameda Co. v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) ("the date on which the party seeking intervention became aware of the litigation is by itself not always relevant"). Instead, it is the date that they have reason to know that their interests might be impaired. *Peruta v. Cnty. of San Diego*, 771 F.3d 570, 572 (9th Cir. 2014). No attempt is made to articulate why a different rule should be applied in this case. The Opposition goes on to say that intervention would allow Ramos to litigate his state court action in this case "to the great prejudice of Plaintiff and Defendants." Aside from failing to specify what prejudice they would suffer, this argument ignores the basis for Ramos's intervention, which is to participate in any potential settlement process that attempts to impermissibly release Ramos's PAGA claims, not to litigate the merits of the case.

Clark's introduction thereafter claims that because Ramos's Motion is based on speculation—a hypothetical settlement—he therefore has no protectable interest. However, "a party seeking to intervene must act as soon as he knows or has reason to know that his interests *might* be adversely affected by the outcome of the litigation." *Peruta*, 771 F.3d at 572. According to Merriam-Webster, the word *might* is "used to say that something is possible." Thus, the legal standard by which intervention is governed, by definition, requires some level of speculation. As such, to the extent that a potential future settlement is speculative, that does not prove the absence of a protectable interest.

Clark then states that even if there was a class action settlement, Ramos could protect his interest by utilizing the procedures of Fed. R. Civ. P. 23. This misses the point. Ramos does not seek to intervene because of some defect he perceives in a potential future class action settlement. He seeks to intervene because of the potential that Clark will seek to impermissibly release <u>nonoverlapping</u> portions of Ramos's PAGA claim that are time-

barred under Clark's PAGA charter.

Clark's introduction concludes with a claim that Ramos has not demonstrated that Clark does not adequately represent the same interest as the state. Not so. Clark's counsel has acknowledged that she could not rule out the possibility that she may seek to release time-barred portions of Clark's PAGA claim that artificially encroach into nonoverlapping portions of Ramos's one-year PAGA window. This is sufficient to establish that Clark does not adequately represent the same interest as the state in Ramos's PAGA claim because such an illusory release would cheat the state and aggrieved employees out of penalties that Ramos otherwise would be entitled to recover on their behalf in his PAGA claim.

Based on the foregoing, Clark has failed to offer any justification for denying Ramos intervention.

## II. ARGUMENT

### a. Intervention is Timely

#### i. Stage of Proceedings Militates in Favor of Intervention

Clark claims that the stage of the proceedings militates against intervention because the parties have reached an advanced stage in the litigation—i.e., discovery has been completed and class certification has been decided. These arguments would only have any relevance if the predicate for Ramos's intervention was to conduct discovery or otherwise litigate the merits of the case. Ramos does not seek to do any of those things. Thus, it is irrelevant that discovery has been conducted and motions have been argued. Ramos is intervening to prevent a potential settlement between Clark and Defendants from impermissibly extinguishing PAGA claims that are barred by Clark's one-year PAGA window and that artificially overlap into time periods that are not barred by Ramos's one-year PAGA window. Thus, since the reason for Ramos's intervention is to prevent an improper settlement from occurring, and the parties had not yet even discussed settlement at the time the Motion to Intervene was brought, the Motion is arguably a bit early, not late. Consequently, the stage of the proceedings militates in favor of intervention.

Clark also makes an irrelevant and untrue claim that Ramos only intervened to

"thwart any potential settlement of Plaintiff's Business Expense Subclass." Clark's unfounded belief that Ramos only seeks to "thwart a potential settlement" is no grounds to deny intervention. Indeed, several circuit courts, as well as the California Supreme Court have reinforced the principal that objectors/intervenors are a welcome part of the settlement process, and in fact ease the burden of settlement approval on the trial court. "After a proposed settlement has been reached, the plaintiffs and defendants are no longer adversaries. 'In such circumstances, objectors play an important role by giving courts access to information on the settlement's merits.' ( *Bell Atlantic Corp. v. Bolger* (3d Cir. 1993) 2 F.3d 1304, 1310 ; see *Redman v. RadioShack Corp.* (7th Cir. 2014) 768 F.3d 622, 629 ['When there are objecting class members, the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors.']; Fitzpatrick, *The End of Objector Blackmail?* (2009) 62 Vand. L.Rev. 1623, 1630 (hereafter Fitzpatrick) ['[W]ithout objectors there would be no adversarial testing of class action settlements at all.'])." *Hernandez v. Restoration Hardware, Inc.*, 4 Cal.5th 260, 274-75 (2018). As such, although Clark's claim is untrue, Ramos's intervention to "thwart any potential settlement" would be no ground to deny intervention.

In support of his argument that Ramos's Motion is untimely, Clark argues that Ramos knew that his case was potentially "subsumed" (whatever that means) by the *Clark* action by no later than February 21, 2019 and that Clark added a PAGA claim to his suit on March 7, 2019, but nevertheless waited 20 months to intervene. However, because the date the proposed intervenor learns of a lawsuit is <u>not</u> the starting point for determining the timeliness of intervention (*Chamness*, 722 F.3d at 1121), Ramos's mere knowledge that Clark had a partially overlapping PAGA claim is irrelevant unless Clark also proves that his knowledge of the suit put him on notice that Clark would be taking some action that would impair the <u>nonoverlapping</u> portions of Ramos's PAGA claim. But the Opposition never specifies why Ramos's mere knowledge of the existence of this litigation, or any of the events that transpired thereafter, put him on notice that his PAGA claim might be impacted by the *Clark* suit. Ramos concedes that his knowledge of the existence of the

*Clark* suit did put him on notice that Clark might release portions of Ramos's PAGA claim that overlap with Clark's (which would not be per se improper). But how is it that Ramos's mere knowledge of the existence of this suit put him on notice that Clark would impermissibly attempt to release non-overlapping portions of Ramos's PAGA claim (which would be improper)? Should every litigant simply presume that another litigant will always take some improper action that will impair their rights? That is not the assumption under which Ramos was operating and courts should not require litigants to operate under such an assumption. Indeed, such an approach to intervention would result in premature litigation of issues that may not warrant litigation.

The Opposition claims that Ramos presents no coherent reason for his delay. However, there was no delay. Ramos moved to intervene within days of learning that Clark might sweep nonoverlapping portions of Ramos's PAGA claim into a potential future settlement with Defendants. Ramos had not moved to intervene at any time prior to that because he had no reason to believe that Clark would attempt to impermissibly release time periods that artificially encroach into Ramos's one-year PAGA window, but that are barred by Clark's one-year PAGA statute of limitations. Again, Ramos presumed that Clark would eventually release the overlapping portions of his and Ramos's respective PAGA claims, but did not presume that Clark would improperly attempt to release nonoverlapping portions.

Based on the above, Ramos's Motion is timely.

**b. Ramos Has a Protectable Interest in the *Clark* Action**

Clark claims that Ramos does not have a significant protectable interest because he cannot predict whether the *Clark* action will settle at all. Note the irony with Clark's argument. Earlier in the Opposition, he argues that the Motion was brought too late because he waited 20 months to bring it. Yet, he simultaneously argues that the Motion is too early because Ramos does not know whether Clark will settle at all. Putting aside this contradiction in legal positions, the fact that a settlement may not occur does not mean that Ramos lacks a protectable interest. Indeed, complete certainty that one's interests will be

impaired is not a prerequisite to intervention. Intervention is proper at the time the proposed intervenor "knows or has reason to know that his interests *might* be adversely affected by the outcome of the litigation." *Peruta*, 771 F.3d at 572. Thus, the fact that the settlement has not yet occurred is no bar to Ramos's intervention.

Clark also claims that Ramos's interest in this suit is not substantial because the 10-week nonoverlapping period of Ramos's PAGA claim (which is about 20% of his claim) that Clark seeks to improperly extinguish is only a small fraction of the total recovery. However, Clark cites to no legal authority that purports to impose a minimum percentage of total recovery threshold to prove that an interest is substantial. Under Clark's "percentage of total recovery" standard, Clark could theoretically seek to extinguish 1% of Ramos's PAGA claim, which theoretically could have a value of $10,000,000, but because it is only a "small fraction" of the total recovery, it would be not substantial, thereby preventing Ramos from proving that he has a protectable interest. As is obvious by this illustration, Clark's argument is not persuasive.

Clark also points out there is no indication that the LWDA, the real party in interest, seeks to intervene. What this argument fails to recognize is that Ramos has been duly deputized to act as a proxy for the LWDA with respect to the claims covered by his PAGA Notice. As such, it is irrelevant that the principal has not sought to intervene when its duly authorized agent has done so on its behalf.

**c. Ramos's Interest Would Be Impaired By a Potential Clark Settlement**

Clark claims that Ramos has no interests that might be impaired because he can protect those interests by moving to lift the stay in his state court action. However, on page 1:18 of his Opposition, Clark contradicts this statement by claiming that Ramos's "state court action … is properly stayed." If Clark believes Ramos's state court action is "properly stayed," then why does he argue that he can and should protect his interests by moving to lift that stay? Putting aside this contradiction, Ramos has in fact moved to lift the stay of that action, which is presently set for hearing on October 30, 2020. However, even if the stay of the state court action were to be lifted, that would not eliminate the need for

intervention in this case because there is no action that Ramos could take in his state court action that would prevent Clark from attempting to release nonoverlapping portions of Ramos's PAGA claim in a settlement with Defendants whereas there are concrete actions Ramos could take in this suit to prevent such improper attempts to vitiate his PAGA claim.

Clark also claims that Ramos's interests will be adequately protected by virtue of protections afforded by Fed. R. Civ. P. 23. However, this misses the point. Ramos has no basis to challenge any potential class action settlement at this point in time. The only aspect of a potential settlement that he has grounds to challenge presently is the potential overbroad PAGA release of his nonoverlapping PAGA claims.

Clark again argues that Ramos's Motion is premature because no settlement has occurred. This argument flies in the face of arguments made earlier in the Opposition, which claim that the Motion was brought too late. The Motion cannot be simultaneously too late and too early. As stated above, the starting point for determining timeliness of intervention is the date that the proposed intervenor "knows or has reason to know that his interests *might* be adversely affected by the outcome of the litigation." *Peruta*, 771 F.3d at 572. Under this standard, no settlement need actually occur if the proposed intervenor has reason to know that a future settlement *might* adversely affect his interests.

Clark claims that Ramos has presented no evidence that the LWDA interests would be compromised in any way by Clark's actions. Not so. Plaintiff has submitted evidence showing that Clark's counsel might release Ramos's nonoverlapping PAGA claims despite that Clark is time barred from recovering any penalties for those nonoverlapping claims. Such an overbroad release would cheat the LWDA and aggrieved employees out of penalties that Ramos would otherwise be entitled to recover on their behalf in his PAGA action. Thus, the LWDA's interests would be compromised by Clark's release of Ramos's nonoverlapping PAGA claims.

**d. Clark Will Not Adequately Protect Ramos's Interests Because His Lawyer Has Already Acknowledged that She Won't**

Clark cites to three factors that are relevant in determining whether an intervenor's

interests are adequately protected by an existing party: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Application of these factors only reinforces the argument that Clark will not adequately protect Ramos's interests.

First, based on Clark's counsel's representation that she cannot rule out the possibility that she will release portions of Ramos's PAGA claim that have no overlap with Clark's, Clark will not "undoubtedly make" all of Ramos's arguments for him. Indeed, Ramos argues that releasing portions of his PAGA claim that have no overlap with Clark's, and which Clark is barred from litigating under his one-year PAGA statute of limitations, is improper. However, Clark believes it is proper. Thus, Clark will be making arguments against him, not for him. Consequently, this factor demonstrates that Ramos's interest will not be adequately protected by Clark.

Second, for the same reasons discussed above, Clark is not willing to make Ramos's arguments for him. Indeed, it is a complete fiction to pretend that Clark will be arguing that it is improper for Clark to release portions of Ramos's PAGA claim that do not overlap with Clark's, and which are barred by Clark's one-year PAGA statute of limitations. Consequently, this factor demonstrates that Ramos's interest will not be adequately protected by Clark.

Third, Ramos would most certainly offer necessary elements to the proceeding that Clark and Defendants would neglect. Indeed, both Clark and Defendants will certainly be neglecting to address the impropriety of their own potentially overbroad release of PAGA claims because this would be against their own self interests. Here, Ramos will address those improper aspects of Clark's potential settlement that they will most certainly neglect. Consequently, this factor demonstrates that Ramos's interest will not be adequately protected by Clark.

Clark claims that he and Ramos seek to represent the same interest of obtaining as much compensation for the LWDA and aggrieved employees as possible. Not so. Clark's release of stale PAGA claims—which his counsel has not ruled out—would not provide Defendants with any additional legal protections against Clark nor would it result in any additional compensation to the state or aggrieved employees. The only additional legal protections Clark's illusory release of stale PAGA claims would provide Defendants is the release of Ramos's PAGA claims. Thus, the true purpose for Clark's inclusion of stale PAGA claims in a potential settlement would be to give Defendants a free release of Ramos's PAGA claims; a two-for-the-price-of-one deal. Such an illusory release of stale PAGA claims would be adverse to the interests of the state and the very aggrieved employees that Clark and Ramos collectively represent by cheating them out of PAGA penalties that Ramos otherwise could have recovered for them in his PAGA suit. In light of Clark's openness to procure a settlement that contemplates release of certain PAGA claims for no consideration, he most certainly cannot claim that he represents that same interests as Ramos or the state. Nor can he claim that this course of action would "maximize recovery for the LWDA," as he claims in his Opposition.

Based on the foregoing, Clark will not adequately protect Ramos's interests.

## III. CONCLUSION

Based on the above, Plaintiff respectfully requests that the Court grant his Motion for Leave to Intervene.

**PIMENTEL LAW, P.C.**

Dated: October 24, 2020

By: ______________________________
Gabriel J. Pimentel, Esq.
Attorney for Prospective Plaintiff-Intervenor
Elith Chris Ramos