1

2           **UNITED STATES DISTRICT COURT**

3           **EASTERN DISTRICT OF CALIFORNIA**

4

5

6 PAUL CLARK, individually, and on behalf      Case No. 1:18-cv-00899-AWI-EPG
of other members of the general public

7 similarly situated,                **ORDER DENYING MOTION TO
INTERVENE**

8             Plaintiffs,       **ORDER DENYING MOTION TO
STRIKE**

9 v.

10 QG PRINTING II, LLC, a Connecticut      (Doc. Nos. 57 & 68)
limited liability company;

11 QUAD/GRAPHICS, INC., a Wisconsin
corporation; and DOES 1 through 10,

12 inclusive,

13            Defendants.

14

15

16

17     Prospective Plaintiff-Intervenor Elith Chris Ramos brings a motion to intervene, Doc. No.

18 57, in this action on the grounds that a claim under California's Private Attorneys General Act

19 ("PAGA") in this action overlaps with a PAGA claim he brought in state court. He also brings a

20 motion to strike a statement filed in opposition to his motion after the motion was taken under

21 submission. For the reasons set forth below, the Court will deny both motions.

22                    **BACKGROUND**

23     Plaintiff Paul Clark brings this class action against Quad/Graphics, Inc. ("QG") and QG

24 Printing II, LLC ("QG Printing") (together, "Defendants") in connection with alleged wage-and-

25 hour violations at four commercial printing facilities in California. It was removed to this Court on

26 June 29, 2018 on diversity grounds under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §

27 1332(d). Doc. No. 1. Clark brought a motion for class certification on November 8, 2019, Doc.

28 No. 46, after filing two amended complaints. Doc. No. 14 and 34. The Court certified two claims

for class aggregation under Rule 23(b)(3) of the Federal Rules of Civil Procedure for the period from May 29, 2014 through September 17, 2020. Doc. No. 54. First, the Court certified claims that Defendants used invalid, blanket waivers to deprive employees of meal breaks ("Meals Break Waiver Claims"). Second, the Court certified claims that Defendants failed to provide legally sufficient reimbursement for the purchase of protective steel-toed boots ("Business Expense Claims"). Id. In addition, Clark seeks civil penalties under PAGA, California Labor Code §§ 2698, *et seq.* ("PAGA Claims"), for Labor Code[1] violations, including Defendants' alleged failure to provide reimbursement for the purchase of steel-toed shoes. Doc. No. 34 at 30.[2]

Ramos was a maintenance employee in one of the California printing facilities at issue in this action for a 22-month period extending from June 29, 2016 to May 1, 2018. Doc. No. 62-1, ¶ 9. On September 24, 2018, Ramos submitted a PAGA Notice to the California Labor & Workforce Development Agency ("LWDA") asserting that Defendants failed to reimburse maintenance employees who did not earn at least double the minimum wage for hand tool purchases, in violation of Sections 2802 and 1197 of the Labor Code. Doc. No. 57-1 at 2:8-12; Doc. No. 57-2 at 6-7. The notice also states that QG Printing "failed to list the complete and correct name and address of the legal entity that is the employer on the wage statements of all of its California employees, … in violation of Labor Code § 226(a)(8)." Doc. No. 57-1, Ex. 1.

On December 3, 2018, Ramos filed an action against Defendants in the Merced Superior Court (the "State Court Action") alleging four claims: (1) an individual claim for failure to provide reimbursement for hand tool expenditures in violation of Labor Code § 2802; (2) an individual claim for unfair competition in violation of California Business & Professions Code § 17200; (3) an individual claim for failure to pay minimum wage in violation of Labor Code § 1197; and (4) a representative claim for civil penalties under PAGA predicated on Defendants' failure to provide reimbursement for hand tool expenditures. Doc. No. 57-2 at 9-19.

On February 21, 2019, Defendants filed a motion to stay the State Court Action based on

---

[1] Unless otherwise indicated, "Labor Code," as used herein, refers to the California Labor Code.
[2] Unless otherwise indicated, all page number citations to records on the Court's electronic docket are to the page numbers in the CM/ECF stamp at the top of each page.

the risk of inconsistent findings with respect to overlapping issues. Doc. No. 57-2 at 1:16-19 & Ex. 3. Specifically, the motion asserted that the State Court Action alleged "identical issues to those alleged" in this case, Doc. No. 57-2 at 21:28-22:29, and that Ramos sought to "represent alleged aggrieved employees under PAGA, seeking PAGA penalties for the same wage and hour violations as those alleged [in this action] for a time period covered by [this action]." Doc. No. 57-2 at 22:9-12.  The motion to stay was granted on April 3, 2019. Doc. No. 63 at 5:27-28.

On October 5, 2020, Ramos filed a motion for intervention of right in this action, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. Doc. No. 57; Doc. No. 57-1, Part III.a. The motion attached a Complaint-in-Intervention seeking civil penalties under PAGA for Defendants' alleged failure to reimburse maintenance employees for hand tools, in violation of Sections 1182.12, 1194, 1194.2, 1197 and 2802, subdivisions (a)-(d), of the Labor Code, and for Defendants' alleged failure to provide complete and correct employer information on wage statements, in violation of Section 226, subdivision (a)(8), of the Labor Code. Doc. No. 57-2 at 117-22. The PAGA claim is the only claim set forth in the Complaint-in-Intervention. Id. Clark and the Defendants filed separate oppositions to the motion, Doc. Nos. 62 and 63, and Ramos replied to each opposition. Doc. Nos. 64 and 65.

On December 3, 2020, Defendants' filed a statement of recent decision informing the Court that the Merced Superior Court had lifted the stay in the State Court Action on October 30, 2020 and arguing that Ramos's motion to intervene should be denied on that additional basis. Doc. No. 67. The same day, Ramos filed a motion to strike the statement on the grounds that it was untimely and on the grounds that Defendants failed to make argument relating to a possible lifting of the stay in their opposition. Doc. No. 68.

**LEGAL FRAMEWORK**

Federal Rule of Civil Procedure 24 allows for two types of intervention in an existing action: intervention of right under Rule 24(a)[3] and permissive intervention under Rule 24(b). Chambers Med. Found. v. Chambers, 236 F.R.D. 299, 301–02 (W.D. La. 2006), aff'd, 2006 WL

---

[3] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

1  1895462 (W.D. La. July 5, 2006), and aff'd sub nom. <u>Chambers Med. Found. v. Petrie</u>, 221 F.

2  App'x 349 (5th Cir. 2007).

3         The Ninth Circuit applies a four-part test to analyze intervention as of right under Rule

4  24(a)(2):[4] (1) the motion must be timely; (2) the applicant must claim a "significantly protectable"

5  interest relating to the property or transaction which is the subject of the action; (3) the applicant

6  must be so situated that the disposition of the action may as a practical matter impair or impede its

7  ability to protect that interest; and (4) the applicant's interest must be inadequately represented by

8  the parties to the action. <u>Chamness v. Bowen</u>, 722 F.3d 1110, 1121 (9th Cir. 2013); <u>Sierra Club v.

9  U.S. EPA</u>, 995 F.2d 1478, 1481 (9th Cir. 1993).

10        A motion to intervene "must state the grounds for intervention and be accompanied by a

11  pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

12  Rule 24 is to be interpreted broadly in favor of intervention, <u>Prete v. Bradbury</u>, 438 F.3d 949, 954

13  (9th Cir. 2006) (quoting <u>United States v. Alisal Water Corp.</u>, 370 F.3d 915, 919 (9th Cir. 2004)),

14  but the proposed intervenor has the burden of proving each element. <u>American Nat'l Bank and

15  Trust Co. v. City of Chicago</u>, 865 F.2d 144, 146 (7th Cir. 1989).

16                          **RAMOS'S MOTION TO INTERVENE**

17  *Ramos's Opening Memorandum*

18        Clark's counsel informed Ramos's counsel that a PAGA settlement in this action could

19  release claims relating to reimbursement for hand tools, as well as claims relating to

20  reimbursement for steel toed boots, for a period of time not covered by the PAGA claim in this

21  case. Doc. No. 57-1 at 2:26-28. Ramos contends that he must be permitted to intervene, pursuant

22  to Rule 24(a)(2), to protect his PAGA claim from being vitiated by settlement that exceeds the

23  scope of Clark's PAGA claim. Doc. No. 57-1 at 2:3-5.

24  *Defendants' Opposition*

25        Defendants argue that Ramos's motion to intervene must be denied for lack of jurisdiction

26

27  ---

[4] Rule 24(a)(2) states: "Upon timely application anyone shall be permitted to intervene in an action … when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is
28  so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

4

1   because the Court is barred under 28 U.S.C. § 1367 from exercising supplemental jurisdiction over

2   Ramos's claims and Ramos cannot establish an independent basis for jurisdiction.  Doc. No. 62,

3   Part II. Further, Defendants argue that Ramos has no protectable interest in the disposition of the

4   PAGA claim in this action because: (i) PAGA claims belong to the State of California, not to their

5   litigation proxies or other aggrieved employees; and (ii) as the real party in interest in all PAGA

6   claims, the State of California is already a party to this action. Id., Part III.A.1. Further,

7   Defendants argue that Ramos's motion to intervene is not timely, given the fairly advanced stage

8   of this litigation and the amount of time that passed between the assertion of the PAGA claim in

9   this action and the filing of the instant motion. Id., Part III.A.2. Finally, Defendants contend that

10  Ramos has failed to show that Clark or his counsel are inadequate to protect California's interests

11  in connection with the PAGA claim in this action. Id., Part III.A.3.

12  *Clark's Opposition*

13          Clark argues that Ramos's motion is untimely, Doc. No. 62, Part III.B., and that Ramos

14  does not have a substantial protectable interest in this action because: (i) the prospect and terms of

15  settlement are speculative; (ii) there is only a 10-week overlap in the period covered by Ramos's

16  PAGA claim and the period covered by Clark's PAGA claim; and (iii) the State of California—

17  through LWDA—is the real party in interest in this case. Id., Part C. Further, Clark argues that

18  Ramos could protect whatever interests he may have by seeking to lift the stay in the State Court

19  Action or by exercising his rights to object to settlement as a member of the settlement class in

20  this action. Id., Part D. Finally, Clark argues that Ramos has failed to show that Clark and his

21  counsel cannot "adequately protect [Ramos's] interests as a proxy of the state prosecuting a PAGA

22  claim." Id., Part E.

23  *Ramos's Replies*

24          Ramos argues in reply to Defendants' opposition that there is an independent basis for

25  jurisdiction under 28 U.S.C. § 1332 because he stands to recover approximately $60,000 on his

26  personal claims for unreimbursed business expenses, unpaid minimum wage and unfair

27  competition and his "PAGA claim puts in controversy no less than $24,000 and up to $2,472,000."

28  Doc. No. 64, Part II.a.i.-iv. He also states that statutory penalties under Section 558, subdivision

(a), of the Labor Code "puts in controversy no less than $2,000 and up to $206,000," that "no less than $90,000" in attorney fees are at stake and that he is also entitled to an unspecified amount of prejudgment interest. Id., Part II.a.v.-vii. Further, Ramos concedes that he does not have "any personal property interest" in his PAGA claim but asserts that he has the right to intervene in this action "on behalf of the state to represent its interests." Doc. No. 64, Part II.b. He also argues that intervention is warranted because his PAGA claim is distinct as to time period and substance from Clark's PAGA claim; that the delay in seeking to intervene was justified; and that Clark and his counsel cannot be trusted to protect Ramos's PAGA claim at the expense of Clark's PAGA claim. Id., Part II.f.

In reply to Clark, similarly, Ramos argues that his motion is timely because he did not initially apprehend the potential implications of this action for his PAGA claim and that intervention is warranted because he is the LWDA's "duly authorized agent" and the LWDA's interests would be compromised if Clark were to release Ramos's "nonoverlapping PAGA claims" in settling this action. Doc. No. 65, Part II.

## **DISCUSSION**

As discussed below, the Court will deny Ramos's motion to intervene for lack of subject matter jurisdiction over the Complaint-in-Intervention and because he has failed to show that intervention is required to protect his putative interest in his PAGA claim.

**I.     Jurisdiction over Complaint-in-Intervention**

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. See United States v. Marks, 530 F.3d 799, 810 (9th Cir. 2008) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "It is axiomatic that a court must have subject matter jurisdiction over all parties' claims in order to adjudicate the case or controversy." City & Cty. of San Francisco v. ExxonMobil Oil Corp., 2009 WL 1189594, at *3 (N.D. Cal. May 4, 2009) (citing Marshall v. Marshall, 547 U.S. 293 (2006)). "Subject matter jurisdiction is afforded when federal questions are raised, 28 U.S.C. § 1331, when parties are diverse, 28 U.S.C. § 1332, or if supplemental jurisdiction is warranted. 28 U.S.C. § 1367." Id. "The party asserting federal jurisdiction bears the burden of overcoming the presumption against

1 | it." <u>Richard & Sheila J. McKnight 2000 Family Tr. v. Barkett</u>, 2012 WL 3231000, at *3 (D. Nev.

2 | Aug. 3, 2012) (citing <u>Kokkonen</u>, 511 U.S. at 377); <u>see also</u>, <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 567

3 | (9th Cir.1992) ("court may demand that the party alleging jurisdiction justify his allegations by a

4 | preponderance of evidence") (quoting <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178,

5 | 189 (1936)); <u>Jou v. Kimberly-Clark Corp.</u>, 2015 WL 4537533, at *2 (N.D. Cal. July 27, 2015)

6 | ("The burden to demonstrate proper subject matter jurisdiction lies with the party seeking to

7 | invoke federal jurisdiction ….").

8 |       Rule 24 of the Federal Rules of Civil Procedure "states under what circumstances

9 | intervention is proper as a matter of procedure but intervention still must be denied, though all the

10 | requirements of Rule 24 are met, if the federal court cannot take jurisdiction with regard to the

11 | intervenor." <u>Canatella v. California</u>, 404 F.3d 1106, 1113 (9th Cir. 2005) (quoting 7C Charles

12 | Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1917 (2d ed.

13 | 2004)). Since its enactment in 1990, the supplemental jurisdiction statute, 28 U.S.C. § 1367, has

14 | been "the customary vehicle to facilitate jurisdiction of an intervention" in federal court.

15 | <u>Chambers Med. Found. v. Chambers</u>, 236 F.R.D. 299, 302 (W.D. La. 2006), aff'd, 2006 WL

16 | 1895462 (W.D. La. July 5, 2006), and aff'd sub nom. <u>Chambers Med. Found. v. Petrie</u>, 221 F.

17 | App'x 349 (5th Cir. 2007). In cases where a federal court's jurisdiction over the action into which

18 | intervention is sought is grounded upon a federal question jurisdiction (28 U.S.C. § 1331),

19 | "supplemental jurisdiction ordinarily attaches to the intervention without further ado." <u>Id.</u> (citing

20 | 28 U.S.C. § 1367(b)). Where a federal court's jurisdiction over the action into which intervention

21 | is sought is grounded upon diversity (28 U.S.C. § 1332), however, 28 U.S.C. § 1367(b) provides

22 | that courts do not have supplemental jurisdiction over claims by persons seeking to intervene as

23 | plaintiffs under Rule 24 when exercising supplemental jurisdiction over such claims would be

24 | "inconsistent with the jurisdictional requirements of section 1332." <u>Id.</u> (quoting 28 U.S.C. §

25 | 1367(b)). Thus, "a would-be intervenor-plaintiff in a diversity case must demonstrate an

26 | independent jurisdictional ground to support the claim, e.g., federal question or diversity,"

27 | <u>Chambers Med. Found.</u>, 236 F.R.D. at 302, even for intervention of right. <u>Griffin v. Lee</u>, 621 F.3d

28 | 380, 386 (5th Cir. 2010) ("in diversity cases, ancillary (now supplemental) jurisdiction cannot be

1 invoked for plaintiff intervenors, whether they are of right or permissive."); see also, 3B James

2 Wm. Moore et al., Moore's Federal Practice ¶ 24.18 (2d ed. 1993), at 24–182 ("§ 1367(b) makes

3 one change in prior practice by eliminating supplementary jurisdiction over a party who

4 intervenes, even if by right, as a plaintiff in a diversity action if that party does not meet the

5 requirements for diversity jurisdiction.").

6       This action was removed to this court based solely on diversity jurisdiction under 28

7 U.S.C. §1332(d). Doc. No. 1. Further, Ramos seeks to intervene as a plaintiff[5] and the Complaint-

8 in-Intervention does not raise any federal questions. Doc. No. 57-2 at 117-22. Intervention,

9 therefore, must be denied unless the requirements for diversity jurisdiction set forth in 28 U.S.C. §

10 1332 have been satisfied. The sole claim in the Complaint-in-Intervention is brought under PAGA

11 and therefore the applicable statute is 28 U.S.C. 1332(a)(1), which gives district courts original

12 jurisdiction over civil actions between citizens of different states where the amount in controversy

13 exceeds $75,000, exclusive of interest and costs. See Baumann v. Chase Inv. Servs. Corp., 747

14 F.3d 1117 (9th Cir. 2014).

15       It appears to be undisputed that Ramos and Defendants are citizens of different states, and

16 Ramos argues that the amount in controversy requirement is satisfied by: (i) the damages on his

17 individual claims for unreimbursed business expenses and unpaid wages; (ii) civil penalties under

18 PAGA for various Labor Code violations; (iii) statutory penalties under Section 558 of the Labor

19 Code for underpayment of wages; (iv) prejudgment interest; and (v) attorneys' fees. The Court

20 will analyze each component of Ramos's amount in controversy calculation in turn to determine

21 whether Ramos has met his burden to show that the 28 U.S.C. § 1332(a) amount in controversy

22

23 [5]  The rule requiring an independent jurisdictional basis for plaintiff-intervenors in diversity cases does not mean that
courts may not exercise supplemental jurisdiction over defendant-intervenors in diversity cases.

24 Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 160 (3d Cir. 1995) (28 U.S.C. § 1367(b) limits
supplemental jurisdiction over parties who "intervene as plaintiffs" pursuant to Rule 24 but "has little to say about

25 defendants" (emphasis original)). Moreover, the mere fact that Ramos identifies himself as a plaintiff-intervenor in the
Complaint-in-Intervention does not necessarily mean he should be viewed as a plaintiff-intervenor—as opposed to a

26 defendant-intervenor—for purposes of jurisdictional analysis. ExxonMobil Oil Corp., 2009 WL 1189594 at *4 ("An
applicant's asserted intervening position is not dispositive []. Courts must, for jurisdictional purposes, align 'those

27 parties whose interests coincide respecting the primary matter in dispute.' ") (citing Prudential Real Estate Affils., Inc.
v. PPR Realty Inc., 204 F.3d 867, 873 (9th Cir. 2000)). Ramos, however, is seeking recovery solely from Defendants

28 and alleges no claim against Clark. The Court therefore sees no reason to gainsay Ramos's own assertion (which
neither Clark nor the Defendants dispute) that he is properly characterized as a prospective plaintiff-intervenor.

1  requirement has been met. See Dev. Fin. Corp., 54 F.3d at 158 (The burden is on the intervenor to

2  show that his or her claims "are properly before the district court"); Williams v. Sugar Hill Music

3  Publ'g, Ltd., 2006 WL 1883350, at *6 (N.D. Cal. July 7, 2006) ("burden of establishing diversity

4  is on the party seeking to invoke it and it must be proved by a preponderance of the evidence").

5          **A.     Damages for Unreimbursed Business Expenses and Unpaid Wages**

6          Ramos contends that there is $2,000 at stake on his individual claim for unreimbursed

7  business expenses, $36,800 at stake on his individual claim for unpaid wages and $20,400 at stake

8  on his individual unfair competition claim, for a total of $59,200. Doc. No. 64, Part II.a.i.-iii; see

9  also, Doc. 57-2 at 117-22. While all of these claims are in the State Court Action, none of them

10  appear in the Complaint-in-Intervention. Doc. No. 57-2 at 117-22. Since Ramos does not seek

11  intervention for these claims in this action, the Court sees no justification for including them in the

12  jurisdictional amount in controversy calculation, even assuming Ramos's recovery estimates are

13  otherwise creditable.

14          **B.     Civil Penalties Under PAGA**

15          Ramos contends that his "PAGA claim puts in controversy no less than $24,000 and up to

16  up to $2,472,000." Doc. No. 64, Part III.a.iv. The $24,000 figure assumes six Labor Code

17  violations as to each of 40 employees in a single pay period, with a civil penalty, per Section 2699

18  of the Labor Code, of $100 per violation. Id. The $2,472,000 figure assumes six Labor Code

19  violations every week as to each of 40 employees for the entire one-year limitation period

20  applicable to PAGA claims. Id. It also assumes, pursuant to Section 2699, subdivision (f)(2), a

21  civil penalty of $100 for each "initial violation" of a given Labor Code provision as to a given

22  employee and a civil penalty of $200 for "each subsequent violation." Id.

23          This analysis, however, incorrectly assumes that the total amount of civil penalties at stake

24  on a PAGA claim are included in determining whether the amount in controversy satisfies the

25  jurisdictional threshold. In *Urbino v. Orkin Services of California, Inc.*, 726 F.3d 1118 (9th Cir.

26  2013), the Ninth Circuit held that PAGA penalties allocable to named plaintiffs cannot be

27  aggregated with the PAGA penalties allocable to other aggrieved employees to satisfy the amount

28  in controversy requirement under 28 U.S.C. § 1332(a). Id. at 1122-23; see also, Canela v. Costco

1   _Wholesale Corp._, 971 F.3d 845, 849 (9th Cir. 2020); _Higginbotham v. S. E. Employee Leasing_

2   _Servs., Inc_, 2020 WL 5535421, at *3 (E.D. Cal. Sept. 15, 2020).

3        Further, since _Urbino_, numerous district courts have held that California's share of PAGA

4   penalties should be excluded from the jurisdictional amount in controversy calculations because:

5   (i) California, as the real party in interest on PAGA claims, is not a "citizen" for diversity

6   purposes; and (ii) because the state's interest in a PAGA claim is distinct from an employee's

7   interest in a PAGA claim. See, e.g., _Adame v. Comtrak Logistics, Inc._, 2016 WL 1389754, at *6

8   (C.D. Cal. Apr. 7, 2016); _Lopez v. Ace Cash Exp., Inc._, 2015 WL 1383535, at *5 (C.D. Cal. Mar.

9   24, 2015) ("… the 75% share of any PAGA recovery that would be awarded to the LWDA may

10  not be aggregated with Plaintiff's 25% share to determine the amount in controversy in this

11  action."); see also, _Garrett v. Bank of Am., N.A._, 2014 WL 1648759, at *6-*7 (N.D. Cal. Apr. 24,

12  2014); _Willis v. Xerox Bus. Servs., LLC_, 2013 WL 6053831, at *9 (E.D. Cal. Nov. 15, 2013)

13  ("the Court finds no logical support that Defendant, while precluded from relying upon the total

14  amounts awardable under PAGA when evaluating the amount in controversy, may rely upon the

15  75% of the total amount payable to the LWDA, to demonstrate the $75,000 threshold."); _Main v._

16  _Dolgen California, LLC_, 2013 WL 5799019, at *3 (E.D. Cal. Oct. 28, 2013).

17       The Court agrees with the reasoning in these cases. Section 2699, subdivision (i), of the

18  Labor Code provides that the State of California takes 75% of PAGA penalties through the

19  LWDA, leaving 25% of penalties for distribution among aggrieved employees. See Cal. Labor

20  Code § 2699, subd. (i). Thus, even applying Ramos's methodology in all other respects, the

21  amount in controversy on his PAGA claim would be somewhere between $150[6] and $15,450[7]—a

22  small fraction of the amounts set forth in his papers and far less than the jurisdictional threshold of

23  $75,000 under 28 U.S.C. § 1332(a)(1). Moreover, Ramos makes no showing as to the frequency

24  with which Labor Code violations occurred or even the number of pay periods in a year. He

25  merely sets a range bracketed by two extreme (and essentially arbitrary) scenarios, with no

26  indication as to what actually transpired. In short, Ramos is asking the Court to engage in

27  _____

28  [6] $24,000 x 25% / 40 employees = $150.
    [7] $2,472,00 x 25% / 40 employees = $15,450.

1  guesswork. The Court declines to do so and, therefore, cannot credit any civil penalties from

2  Ramos's PAGA claim in calculating the amount put in controversy by the Complaint-in-

3  Intervention. See Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir.

4  2007) (a court "cannot base [its] jurisdiction on a [party's] speculation and conjecture"),

5  overruling on other grounds recognized by Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d

6  975, 981 (9th Cir. 2013).

7       **C.    Attorneys' Fees**

8       Future attorneys' fees are part of determining the amount in controversy if a contract or

9  statute entitles the plaintiff to them. Fritsch v. Swift Trans. Co. of Ariz., LLC, 899 F.3d 785, 788

10 (9th Cir. 2018).

11      Ramos estimates that he would be entitled to recover at least $90,000 in attorney fees in

12 connection with his claims under Sections 1194, 2802 and 2699 of the Labor Code, assuming 100

13 hours of work at a rate of $600 per hour. Doc. No. 64, Part II.v. As noted above, however, there

14 are no claims under Section 1194 or Section 2802 in the Complaint-in-Intervention, see Doc. No.

15 57-2 at 117-22, and thus possible attorney fees in connection with those claims can have no

16 bearing on the amount in controversy calculation here. Further, Ramos assumes an hourly rate of

17 $600 for his attorneys, which is approximately 50% higher than the maximum hourly rate of $400

18 typically permitted in attorney fee awards in the Fresno Division of the Eastern District of

19 California. See Avila v. Cold Spring Granite Co., 2018 WL 400315, at *10 (E.D. Cal. Jan. 12,

20 2018) (Ishii, J.). Finally, in PAGA actions, only the representative plaintiff's pro rata share of

21 attorneys' fees can be taken into account in calculating the jurisdictional amount in controversy.

22 See Canela, 2020 WL 4920949 at *4; Higginbotham, 2020 WL 5535421 at *4; Arrellano v.

23 Optum Med. Grp., 2019 WL 247220, at *4 (C.D. Cal. Jan 17, 2019) (citing Patel v. Nike Retail

24 Servs., Inc., 58 F. Supp. 3d 1032, 1049 (N.D. Cal. 2014)).

25      Adjusting the hourly rate downward from $600 to $400 to conform to norms in this

26 division reduces the total attorney fees award by a third, from $90,000 to $60,000. Allocating that

27 $60,000 equally across the Section 1194, the Section 2802 claim and the PAGA claim implies

28 $20,000 in attorney fees for the PAGA claim. Ramos's share of that $20,000—after deducting

1  shares attributable to the other 39 employees Ramos purports to represent in connection with his

2  PAGA claim—would be approximately $500.[8] Thus, even adopting Ramos's estimates of 100

3  hours of legal work and 40 employee claimants, $500 is the most the Court could allocate to the

4  amount in controversy for attorneys' fees based on information provided by Ramos.

5           **D.      Statutory Penalties**

6           Ramos asserts there is an amount in controversy of "no less than $2,000 and up to

7  $206,000" in statutory penalties under Section 558 of the Labor Code on claims for unpaid wages,

8  assuming 40 employees, up to 52 actionable violations per employee in a one-year period, a $50

9  penalty for the "initial violation" as to each employee and a $100 penalty for each "subsequent

10 violation" as to each employee. Doc. No. 64 at 8:10-12. As noted above, however, there is no

11 Section 558 claim in the Complaint-in-Intervention, let alone any indication that Ramos seeks

12 Section 558 recovery on behalf of a class. See Doc. No. 57-2 at 117-22. Moreover, Ramos makes

13 no showing as to the amount he would personally be entitled to recover under Section 558, as

14 required for diversity jurisdiction even in the context of a putative class action. See Gibson v.

15 Chrysler Corp., 261 F.3d 927, 941 (9th Cir. 2001), holding modified by Exxon Mobil Corp. v.

16 Allapattah Servs., Inc., 545 U.S. 546 (2005); see also, Johnson v. Am. Online, Inc., 2002 WL

17 1268397, at *3 (N.D. Cal. Mar. 21, 2002). And Ramos provides nothing to corroborate the

18 violation rates (or other factors) used in his calculation of statutory penalties. As with his estimate

19 of civil penalties under PAGA, Ramos merely posits a range bracketed by two extremes, with no

20 basis for the Court to draw any conclusion as to what actually took place. The Court therefore

21 cannot include any amount for statutory penalties under Section 558 in the amount in controversy

22 calculation.

23          **E.      Prejudgment Interest**

24          Ramos claims that prejudgment interest on damages at the rate of 7 percent per annum

25 "must be added when calculating the amount in controversy." Doc. No. 64 at 8:14:18. 28 U.S.C. §

26 1332(a)(1), however, expressly states that the amount in controversy calculation for purposes of

27

28 [8] $20,000/40 = $500.

1    jurisdiction is to be "exclusive of interest." Moreover, while it can sometimes be proper to include

2    prejudgment interest in amount in controversy calculations under 28 U.S.C. § 1332(a)(1), see

3    Bruce Alan Herald, P.C. v. Baldwin, 2006 WL 2588657, at *1 (E.D. Pa. Sept. 8, 2006) (citing

4    Brainin v. Melikian, 396 F.2d 153, 155 (3d Cir.1968) and Brown v. Webster, 156 U.S. 328, 330

5    (1895)), Ramos makes no showing as to why that should be the case here and provides no

6    showing as to the amount of prejudgment interest that is supposedly at stake. Thus, prejudgment

7    interest cannot be included in the amount in controversy calculation for this motion.

8              **F.      Conclusion Regarding Subject Matter Jurisdiction**

9              For the foregoing reasons, the Court finds that Ramos has failed to carry his burden to

10   show that the Complaint-in-Intervention puts more than $75,000 in controversy. See 28 U.S.C. §

11   1322(a)(1);see Dev. Fin. Corp., 54 F.3d at 158. The Court must therefore deny the motion to

12   intervene for lack of subject matter jurisdiction over the Complaint-in-Intervention.

13   **II.     Satisfaction of Rule 24(a)(2) Requirements**

14             Ramos has also failed to show that intervention is necessary to protect whatever

15   protectable interest he may have as a proxy for the State of California in connection with his

16   PAGA claim.

17             "In determining whether a non-party may intervene as a matter of right, 'the pivotal issue

18   is whether the disposition of [the current] action, as a practical matter, may impair or impede the

19   intervenors' ability to protect their interests.' " United States v. Oregon, 839 F.2d 635, 638 (9th

20   Cir. 1988). While a lawsuit might "*affect* the proposed intervenors' interests, their interests might

21   not be *impaired* if they have 'other means' to protect them." California ex rel. Lockyer v. United

22   States, 450 F.3d 436, 442 (9th Cir. 2006) (quoting United States v. Alisal Water Corp., 370 F.3d

23   915, 921 (9th Cir. 2004)) (emphasis original).

24             Ramos purports to have an interest by proxy in ensuring proper recovery for the State of

25   California in connection with his PAGA claim and contends that that interest could be impaired by

26   a suboptimal and overbroad settlement in connection with Clark's PAGA claim. Even assuming,

27   however, that this action eventually culminates in settlement, Ramos has not shown that Clark, as

28   a PAGA proxy himself, cannot adequately represent California's interest in recovering PAGA

1   penalties in this action. See Eubank v. Terminix International, Inc., 2018 WL 2215288, *5 (S.D.

2   Cal. May 15, 2018); see also, Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003), as

3   amended (May 13, 2003) ("If the applicant's interest is identical to that of one of the present

4   parties, a compelling showing should be required to demonstrate inadequate representation.").

5   Moreover, Rule 23 of the Federal Rules of Civil Procedure allows for objections to any proposed

6   settlement in this class action. See Harvey v. Morgan Stanley Smith Barney LLC, 2019 WL

7   9441672, at *3 (N.D. Cal. Sept. 5, 2019); Bey v. Mosaic Sales Sols. US Operating Co., LLC, 2019

8   WL 7940584, at *8 (C.D. Cal. June 20, 2019) (denying intervention where aggrieved employees

9   would "be permitted to 'weigh in' on the settlement in connection with the final approval

10   process"). And in any event, it is this Court's "job to consider the interest of the state"—including

11   the interests called out in Ramos's motion to intervene—before approving settlement in this

12   matter. Harvey, 2019 WL 9441672 at *3.

13        In light of these considerations, the Court finds that intervention as of right under Rule

14   24(a)(2) would not be warranted even if Ramos had met his burden to show that the Court has

15   jurisdiction over his Complaint-in-Intervention.

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1

**<u>CONCLUSION</u>**

2      For the foregoing reasons, the Court will deny Ramos's motion to intervene. Further,

3   Ramos's motion to strike will be denied as moot, since the Court did not have cause to consider

4   the Defendant's statement of recent decision in deciding this motion.

5

**<u>ORDER</u>**

6      Accordingly, IT IS HEREBY ORDERED as follows:

7      1.   Prospective Plaintiff-Intervenor's motion to intervene (Doc. No. 57) is DENIED; and

8      2.   Prospective Plaintiff-Intervenor's motion to strike (Doc. No. 68) is DENIED as moot.

9

10  IT IS SO ORDERED.

11  Dated:   January 5, 2021         _____

12                                     SENIOR  DISTRICT  JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28