UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL CLARK, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QG PRINTING II, LLC, a Connecticut limited liability company; QUAD/GRAPHICS, INC., a Wisconsin corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:18-cv-00899-AWI-EPG<br><br>**ORDER ON DEFENDANT'S MOTION TO STRIKE OR DISMISS PAGA CLAIM**<br><br><br><br><br><br>(Doc. No. 87) |

Plaintiff Paul Clark brings suit, on behalf of himself and others similarly situated, against Defendants Quad/Graphics, Inc. ("QG") and QG Printing II, LLC ("QG Printing," and together with QG, "Defendants") in connection with alleged wage-and-hour violations at four commercial printing facilities in California, including claims relating to meal breaks, rest breaks, off-the-clock work and business expenses. In addition to seeking to litigate his claims on a class basis, Plaintiff has alleged a representative claim for civil penalties under California's Private Attorney General Act ("PAGA"), California Labor Code ("Labor Code") §§ 2698, et seq., in connection with various Labor Code violations alleged this case. Doc. No. 34 ¶¶ 119-217.

Defendants have brought a motion to strike or dismiss the representative PAGA claim

under Rule 12(f) of the Federal Rules of Civil Procedure[1] and the inherent authority of federal district courts to manage litigation. Doc. No. 87. The motion has been fully briefed and deemed suitable for decision without oral argument pursuant to Local Rule 230(g). Doc. No. 97. For the reasons that follow, Defendants' motion will be denied without prejudice to filing a similar motion after Plaintiff has filed a revised trial plan specifically addressing portions of the PAGA claim that survive Defendants' concurrent motion for summary judgment and corresponding affirmative defenses.

**BACKGROUND**

QG is a Wisconsin corporation with commercial printing facilities throughout the United States. Doc. No. 49 at 10:4-6. [2]QG Printing is a Connecticut limited liability company and a QG subsidiary. Id. at 10:9-11. QG Printing operates four facilities in California: Merced, West Sacramento, Riverside – Jurupa Valley, and Riverside – Box Springs. Id. at 10:13-16. Plaintiff was a non-exempt, hourly-paid press assistant in the press production area at QG Printing's Merced facility. Id. at 10:25-11:2.

Plaintiff filed this class action in Merced County Court on May 29, 2018, seeking to represent an overarching class of several hundred non-exempt, hourly employees who worked in QG Printing's California facilities in the four-year period prior to the filing of the action. Doc. No. 1. Defendant removed the action to federal court on June 29, 2018, id., and it was assigned to this Court on July 2, 2018. Doc. No. 7.

The Second Amended Complaint ("SAC") (which is the operative pleading in this action) alleges claims for violations of: (i) Labor Code §§ 510 and 1198 (Unpaid Overtime); (ii) Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages); (iii) Labor Code §§ 226.7, 512(a), and 1198 (Failure to Provide Meal Periods); (iv) Labor Code §§ 226.7 and 1198 (Failure to Provide Rest Periods); (v) Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); (vi) Labor Code §§ 201, 202, and 203

---

[1] Unless otherwise noted, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

[2] Page citations to documents on the Court's electronic docket are to the page number in the CM/ECF stamp at the top of each page.

(Wages Not Timely Paid Upon Termination); (vii) Labor Code § 2802 (Unreimbursed Business Expenses); (viii) Labor Code §§ 551, 552, and 558 (Failure to Provide One Day of Rest in Seven); (ix) Labor Code §§ 2698, et seq. (Civil Penalties Under PAGA for Violations of Labor Code); (x) California Business & Professions Code §§ 17200, et seq. (Unlawful Business Practices); and (xi) California Business & Professions Code §§ 17200, et seq. (Unfair Business Practices). Doc. No. 34.

On November 8, 2019, Plaintiff brought a motion pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, Doc. No. 46, to certify an overarching class comprising approximately 1,200 members, see Doc. No. 54 at 13:20-26, and the following subclasses:

- First Meal Break Subclass: Putative class members who worked at least one shift of more than six hours, in connection with claims that QG Printing "chronically understaffs its printing facilities in California while imposing strict deadlines which impede and discourage subclass members from taking, timely uninterrupted and compliant first meal breaks in shifts over six hours";

- Second Meal Break Subclass: Putative class members who worked at least one shift of more than 12 hours, in connection with claims that Defendants had a "a class-wide policy and practice of failing to provide second meal breaks";

- Rest Break Subclass: Putative class members who worked at least one shift of more than 3.5 hours, in connection with claims that subclass members were unlawfully deprived of rest breaks due to "Defendants' practices and procedures requiring employees to remain on premises for rest breaks and chronic understaffing";

- Meal Break Waiver Subclass: Putative class members who worked at least one shift between five and six hours in length or at least one shift between 10 and 12 hours in length, in connection with claims that Defendants use invalid, blanket meal waivers to deprive employees of a first meal break between the fifth and sixth hour of work and to deprive employees of a second meal break between the tenth and twelfth hours of work;

- Off-the-Clock Work Subclass: Putative class members who arrived to work early, in connection with claims that Defendants maintained a class-wide policy of requiring

3

1  employees to determine their assigned workstation by watching a scrolling monitor prior to
2  clocking in for a shift; and

3  • Business Expense Subclass: Putative class members who purchased steel-toed boots for
4  use while working for Defendants, in connection with claims that QG Printing did not
5  provide legally sufficient reimbursement for such purchases.

6 Doc. Nos. 46 and 46-1.

7  In addition, Plaintiff sought to certify a so-called "Derivative Claims Subclass" comprising
8 "claims pursuant to Labor Code sections 510, 1198, 1194, 1997, 1197.1, 201, 202, 203, 204, and
9 226, and Business & Professions Code section 17200, et seq." that are "entirely or partially
10 derivative of the putative class claims" corresponding to the subclasses listed above. Id.

11  Certification was granted with respect to the Meal Break Waiver Subclass and the Business
12 Expense Subclass, and denied as to the other five subclasses. See generally Doc. No. 54. As to the
13 Meal Break Waiver Subclass, the Court found that "determinations [regarding] the validity of QG
14 Printing's prospective waivers and QG Printing's failure to provide premium pay automatically
15 will drive resolution of most—if not all—claims for the Meal Break Waiver Subclass and that any
16 individualized inquiries would pertain primarily to damages (based on the number of meal breaks
17 missed based on invalid waivers and the amount of premium payment improperly withheld)."
18 Doc. No. 54 at 24:23-27. As to the Business Expense Subclass, the Court similarly found that
19 "[d]eterminations on the questions of whether steel-toed shoes were a reimbursable expense and
20 whether the $50 allowance was sufficient would have significant class-wide implications" and that
21 it appeared "questions as to Defendants' legal obligations and the pricing of steel-toed boots could
22 be determined in more or less one stroke." Id. at 32:4-7.

23  The relevant aspects of the Court's ruling with respect to each subclass for which
24 certification was denied were as follows:

25  • First Meal Break Subclass: The Court found that Plaintiff failed to show that Defendants
26  had "a policy prohibiting first meal breaks" and that declarations adduced by Plaintiff
27  "show[ed] significant variability in the rate of alleged first meal break violations across
28  employees and locations." Doc. No. 54 at 20:5-12. Consequently, the Court found that it

4

was likely that "individualized inquiries into the unique circumstances of employees in different roles at different facilities at different points in time during the multi-year period at issue in this case w[ould] be required to determine why a given first meal break was missed (or otherwise comprised)." Id. at 20:17-21.

- Second Meal Break Subclass: The Court found that "[g]iven the rarity of shifts in excess of 12 hours …, the complete lack information in Plaintiff's declarations regarding shifts in excess of 12 hours, Plaintiff's own lack of meaningful experience with shifts in excess of 12 hours, and the declarations provided by Defendants with respect to voluntarily skipping second meal breaks at the end of long shifts, it appears unlikely that Defendants can show at trial that QG Printing had a class-wide policy or practice or prohibiting second meal periods for shifts in excess of 12 hours, and more likely than not that liability determinations in connection with second meal breaks for shifts in excess of 12 hours would focus primarily on whether a given employee was somehow prevented from taking a second meal break or whether that employee voluntarily skipped the second meal break to get home earlier after the end of a long shift." Doc. No. 54 at 22:16-23:7.

- Rest Break Subclass: The Court found that "the number of declarations [was] too small to convincingly corroborate Plaintiff's contention that QG Printing had a class-wide practice of discouraging breaks by understaffing heavy workloads, particularly given the apparent variability in the rates at which declarants missed breaks and Plaintiff's own testimony that he was never discouraged from taking a break." Doc. No. 54 at 27:9-16. Further, the Court found that "even if a determination were made that QG Printing had a class-wide policy prohibiting employees from leaving facilities at rest breaks (and that such a policy was unlawful), trial would still involve not only the individualized work of determining … the extent to which this policy harmed individual employees, but also the individualized work required to decide claims involving breaks that were compromised for reasons unrelated to QG Printing's alleged 'on-premises' policy." Id. at 27:20-26.

- Off-the-Clock Work Subclass: The Court found that "Plaintiff ha[d] failed to make a showing that Defendants had a policy or practice of requiring employees to work off-the-

5

clock by scrolling through assignment monitors before clocking in for a shift" and that "adjudication of off-the-clock work claims would focus largely on individualized inquiries regarding the extent to which a given employee was improperly required or suffered to engage in other conduct—such as taking safety courses, communicating with co-workers, engaging in cleaning before or after shifts, or working through meal breaks." Doc. No. 54 at 30:2-8.

- Derivative Claims Subclass: Plaintiff sought "omnibus certification … of claims under Sections 510, 1198, 1194, 1197, 1197.1, 201, 202, 203, 204, and 226 of the Labor Code and under Section 17200, et seq., of the Business & Professions Code." Doc. No. 54 at 32:11-13. The Court stated that it was "hard to believe that Plaintiff would expect the Court to find, in one fell swoop, that 11 separate claims are suitable for certification based solely on the conclusory and categorical assertion that they are 'entirely or partially derivative' of core claims and without the benefit of any substantive briefing …." Id. at 32:19-23. Similarly, the Court found that Plaintiff had made "no meaningful attempt" to show a predominant question of law or fact across all derivative claims. Id. at 32:24-33:3.

## DEFENDANTS' MOTION

This motion pertains specifically to Plaintiff's PAGA claim, as set forth in the Ninth Cause of Action in the SAC, Doc. No. 34 ¶¶ 119-127, and references to Plaintiff's Ninth Cause of Action and PAGA penalties elsewhere in the SAC. Doc. No. 87 at 2:3-19.

*Defendants' Opening Memorandum*

Defendants argue that Plaintiff's PAGA claim should be dismissed under the Court's inherent authority to control litigation because "it is unmanageable due to the individualized issues that must be decided." Doc. No. 87 at 2:20-22. Defendants contend that the PAGA cause of action "duplicate[s] those wage and hour claims for which Plaintiff sought (and was for the most part denied) class certification" and that the reasoning the Court applied in denying certification for all but two claims precludes litigating the PAGA cause of action on a representative basis. Doc. No. 87-1 at 7:2-7.

//

*Plaintiff's Opposition*

Plaintiff argues that Defendants' motion is untimely to the extent it is brought under Rule 12(f) because Rule 12(f) provides that motions to strike may only be brought "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Doc. No. 93 at 7:7-10 (quoting Rule 12(f)(2)) (internal quotation marks omitted). Further, Plaintiff argues that there is no "manageability requirement in a PAGA action" and that, in any event, its PAGA cause of action is not unmanageable given the nature of the determinations required. Id. at 7:25-8:4.

*Defendants' Reply*

Defendants contend that their motion to strike is timely because it goes to manageability issues that emerged, for the first time, in the Court's class certification order and was not brought as an "initial challenge to the pleadings." Doc. No. 95 at 7:6-14. Further, Defendants contend that the motion is timely under 12(f) because the "essential function of a Rule 12(f) motion is to avoid the expenditures of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Doc. No. 95 at 7:15-8:6 (quoted source and internal quotation marks omitted).

Defendants concede that there is no PAGA manageability requirement "akin to" the manageability requirement for class actions under Rule 23(b)(3) but argue that federal courts nonetheless have "inherent authority to manage their dockets, separate and apart from class action procedure." Doc. No. 95 at 8:8-12. According to Defendants, "[t]here is nothing in PAGA itself limiting the Court's ability to manage its docket." Id. at 9:3-4. Defendants also argue that their motion is based on their "well-established due process right to see ***and contest*** evidence of a violation as to ***each*** purportedly aggrieved employee." Id. at 9:15-24 (emphasis original). According to Defendants, allowing Plaintiff to proceed with his PAGA cause of action would infringe this right because "Plaintiff has yet to provide any cognizable trial plan or demonstrate how he intends to establish that over 1,000 employees are aggrieved (actually injured) when the evidence shows that there is no unlawful policy or practice and each member of the PAGA class would be required to testify." Id. at 2:27-28.

7

# LEGAL FRAMEWORK

## A. PAGA

"The State's labor law enforcement agencies—the Labor and Workforce Development Agency (LWDA) and its constituent departments and divisions—are authorized to assess and collect civil penalties for specified violations of the Labor Code committed by an employer." Raines v. Coastal Pacific Food Distributors, Inc., 23 Cal.App.5th 667, 673 (2018) (quoted source and internal quotation marks omitted). In 2003, citing inadequate funding for enforcement of labor laws, the California Legislature enacted PAGA to "authorize[ ] an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal.4th 348, 360 (2014). The statute was intended "to punish and deter employer practices that violate the rights of numerous employees under the Labor Code." Id. at 384 (quoted source and internal quotation marks omitted). Consequently, a PAGA action may cover a large number of employees. Wesson v. Staples the Off. Superstore, LLC, 68 Cal.App.5th 746, 765–66 (2021), reh'g denied (Sept. 27, 2021), review denied (Dec. 22, 2021); see also Cal. Labor Code § 2699(a) (under PAGA, an aggrieved employee may recover civil penalties for Labor Code violations "on behalf of himself or herself and other current or former employees ....").

## B. Manageability of PAGA Causes of Action

The Court agrees with Defendants that the timing of this motion does not preclude the Court from granting the relief sought to the extent the Court otherwise has the power to do so. See Martinez-Sanchez v. Anthony Vineyards, Inc., 2021 WL 5769471, *3 (E.D. Cal. Dec. 6, 2021) ("Because Defendants' motion is not an initial challenge to the pleadings under Rule 12(f), but rather is requesting to strike Plaintiffs' PAGA claim on the ground that it could not be manageably tried, it can appropriately be brought after the motion for class certification.").

The threshold legal question on this motion, therefore, has to do with the extent (if any) to which the Court has the power to bar or limit Plaintiff's PAGA cause of action. There appear to be three key cases addressing that question: *Wesson v. Staples the Office Superstore*; *Estrada v.*

*Royalty Carpet Mills, Inc.*; and *Hamilton v. Wal-Mart Stores, Inc.* The Court will review each of these cases, in turn, and then consider their collective implications for this action.

### 1. <u>Wesson v. Staples the Office Superstore, LLC</u>

In *Wesson*, plaintiff Fred Wesson brought a PAGA claim against Staples (the office supply retailer) on behalf of 345 general managers of Staples stores in California, alleging that Staples violated the Labor Code by misclassifying general managers as exempt executives. 68 Cal.App.5th at 755.

Staples moved to strike the PAGA claim, arguing that it was "unmanageable" and that litigating it would violate due process because Staples's intended affirmative defense (that general managers were properly classified) required individualized proof as to each general manager. Plaintiff contended, in relevant part, that the trial court lacked authority to impose a manageability requirement on PAGA claims and that Staples had no due process right to present individualized evidence in support of its affirmative defense. <u>Wesson</u>, 68 Cal.App.5th at 755-57.

The California Court of Appeal for the Second District ruled in favor of Staples, finding: (i) that "courts have inherent authority to ensure that PAGA claims can be fairly and efficiently tried and, if necessary, may strike claims that cannot be rendered manageable"; and (ii) that "as a matter of due process, defendants are entitled to a fair opportunity to litigate available affirmative defenses." <u>Wesson</u>, 68 Cal.App.5th at 756. The court further stated, however, that "refusing to certify on manageability grounds alone should be the last resort" and that, if possible, the trial court "should work with the parties to render a PAGA claim manageable by adopting a feasible trial plan or limiting the claim's scope." <u>Id.</u> at 770–71 (quoted and cited sources omitted).

### 2. <u>Estrada v. Royalty Carpet Mills, Inc.</u>

In *Estrada*, plaintiffs were employees at carpet manufacturing facilities operated by defendant Royalty Carpet Mills, Inc. ("Royalty"). 76 Cal.App.5th 685 (2022). They alleged class action claims and a PAGA claim based primarily on purported meal and rest period violations. <u>Id.</u> at 696.

The trial court decertified the meal break subclass and dismissed the meal break portion of the PAGA claim on the ground that there were "numerous individualized issues" that rendered

1  them "unmanageable." Estrada, 76 Cal.App.5th at 709-10. Plaintiffs appealed, arguing that PAGA
2  claims have no manageability requirement. Id. at 709.

3        The California Court of Appeal for the Fourth District agreed with plaintiffs, finding that
4  dismissal of PAGA claims based on manageability would improperly "graft a class action
5  requirement onto PAGA claims" and "interfere with PAGA's purpose as a law enforcement
6  mechanism by placing an extra hurdle on PAGA plaintiffs that is not placed on the state." Estrada,
7  76 Cal.App.5th at 697, 712. The court also acknowledged, however, that "[s]ome PAGA claims
8  involve hundreds or thousands of alleged aggrieved employees, each with unique factual
9  circumstances," and that courts may, in such cases, "limit witness testimony and other forms of
10 evidence when determining the number of violations that occurred and the amount of penalties to
11 assess." Id. at 713. Such an approach, the court reasoned, might encourage litigants to be "prudent
12 in their approach to PAGA claims" and would not be unfair to unrepresented employees because
13 "absent employees do not own a personal claim for PAGA civil penalties." Id. at 713 ("If a
14 plaintiff alleges widespread violations of the Labor Code by an employer in a PAGA action but
15 cannot prove them in an efficient manner, it does not seem unreasonable for the punishment
16 assessed to be minimal.").

17       *3.*    Hamilton v. Wal-Mart Stores, Inc.[3]

18       The Ninth Circuit addressed the question of whether PAGA claims are subject to a
19 manageability requirement in *Hamilton*, a few months after the *Estrada* decision was issued. 39
20 F.4th 575 (9th Cir. 2022).

21       In *Hamilton*, plaintiff brought class claims and a PAGA claim against Walmart for wage-
22 and-hour violations. Hamilton, 39 F.4th at 580. The district court dismissed one of plaintiff's
23 PAGA claims as "unmanageable," after decertifying the corresponding subclass. Id. at 582. The
24 Ninth Circuit reversed, finding that the Rule 23(b)(3) manageability requirement "cannot be
25 imposed in PAGA actions under the guise of the court's inherent powers" because doing so would
26 be "inconsistent with PAGA's purpose" and "would not represent a reasonable solution to a

---

[3] The Court takes note of and appreciates defense counsel's citation to and discussion of contrary authority. See, e.g., Doc. No. 87-1 at 11:7-10 & 12:21-22; Doc. No. 95 at 6:2-20.

1  specific problem." Id. at 590 (citation and internal quotation marks omitted); see also id. at 587
2  ("In light of the structure and purpose of PAGA, we conclude that imposing a manageability
3  requirement in PAGA cases akin to that imposed under Rule 23(b)(3) would not constitute a
4  reasonable response to a specific problem and would contradict California law by running afoul of
5  the key features of PAGA actions.").

## DISCUSSION

*Hamilton* establishes that district courts in California cannot impose a threshold manageability requirement on PAGA claims "akin to the manageability requirement under Rule 23(b)(3)." See Hamilton, 39 F.4th at 587. *Hamilton* also indirectly affirms, however, that district courts have inherent authority to regulate PAGA claims to the extent doing so constitutes "a reasonable response to a specific problem" and does not "contradict California law by running afoul of the key features of PAGA actions." See Hamilton, 39 F.4th at 587. *Wesson* and *Estrada*, similarly, both recognize that a court's inherent authority to manage litigation can be exercised without offending PAGA. See Wesson, 68 Cal.App.5th at 770-71; Estrada, 76 Cal.App.5th at 713.

Here, Plaintiff filed a trial plan before the Court issued its order on his motion for class certification. Doc. No. 46-3. That trial plan states, in essence, that "Defendants' uniform policies and practices violate California law" and that consequently, "liability will likely be determined for many of the causes of action by a motion for summary judgment or partial summary judgment." Doc. No. 46-3 at 3:15-19; see also id. at 3:10-14 (indicating that Plaintiff's claims are based on allegations that Defendants "imposed uniform policies and practices"). Further, it states that "if liability is established for the certified claims, determining derivative PAGA penalties will be a simple matter of multiplying the number of violations by the penalties set forth in the statute," with no further discussion of how the PAGA claim—and its many component parts—might be litigated. Doc. No. 46-3 at 2 n.2.

As set forth above, the Court later denied class certification for five of Plaintiff's proposed subclasses on the grounds that Plaintiff had failed to show that the underlying violations were due to uniform policies or practices and that, consequently, hundreds of mini-trials could be required for each proposed subclass. See generally Doc. No. 54. Thus, the "specific problem" here is that

Plaintiff has not demonstrated that there is a feasible way to try the various aspects of its multi-dimensional PAGA claim without compromising Defendants' due process rights and placing undue burdens on the Court, Defendants and the jury.

As noted above, the California Court of Appeal recognized in *Estrada* that "[s]ome claims involve hundreds or thousands of alleged aggrieved employees, each with unique factual circumstances," Estrada, 76 Cal.App.5th at 713, and that under such circumstances, "courts may … limit witness testimony and other forms of evidence when determining the number of violations that occurred and the amount of penalties to assess." Id.; see also Wesson, 68 Cal.App.5th at 771 (finding that judges should "engineer[] solutions to difficult problems of case management" and "work with [] parties to render a PAGA claim manageable by adopting a feasible trial plan or limiting the claim's scope"). Further, the *Estrada* court directed "the parties and [trial] court to discuss whether the pool of alleged aggrieved employees should be narrowed or divided to effectively prove the alleged violations at trial" and left it to "the trial court's discretion to determine whether additional evidence … [was] necessary to determine the extent of the Labor Code violations alleged." Estrada, 76 Cal.App.5th at 714. "[I]f plaintiffs are unable to show widespread violations affecting unrepresented employees in a reasonable manner," the *Estrada* court further stated, "the [trial] court shall award penalties to the aggrieved employees to the extent of plaintiffs' proof." Id.

In the Court's view, a similar approach—aimed at ensuring Plaintiff makes a prima facie showing (and that Defendants have a constitutionally adequate opportunity to raise a defense) as to each alleged Labor Code violation for which Plaintiff may seek a civil penalty—is warranted here. Cf. Hibbs-Rines v. Seagate Techs., LLC, 2009 WL 513496, *4 (N.D. Cal. Mar. 2, 2009) ("Plaintiff will have to prove Labor Code violations with respect to each and every individual on whose behalf plaintiff seeks to recover civil penalties under PAGA."); see also Cardenas v. McLane Foodservice, Inc., 2011 WL 379413, *3 (C.D. Cal. Jan. 31, 2011) ("[A] plaintiff cannot recover on behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant.").

The Court will therefore order Plaintiff to file a revised trial plan (after substantial, good-

faith consultation with Defendants) to the extent he intends to pursue his PAGA claim. Cf. Hinds v. FedEx Ground Package Sys., Inc., 2022 WL 1212016, at *1-*2 (N.D. Cal. Apr. 25, 2022) (ordering Plaintiff to offer a trial plan before making a ruling on a motion to strike a PAGA claim); Ortiz v. Amazon.com LLC, 2020 WL 5232592, at *2 (N.D. Cal. Sept. 2, 2020) (similar). Any trial plan filed with this Court must reflect the Court's order on Plaintiff's motion for class certification, Doc. No. 54, relevant aspects of this order, and relevant aspects of the Court's order on Defendant's pending motion for summary judgment. It must also include a declaration by Plaintiff's counsel regarding efforts to reach agreement with Defendants' counsel as to the trial plan and account for the presentation of evidence in connection with both Plaintiff's prima facie case and Defendants' affirmative defenses. Defendants will then be permitted to bring a motion regarding the trial plan based on Court's inherent case management authority, provided that Defendants' counsel has met and conferred (or at least attempted to do so) with Plaintiff's counsel regarding the trial plan in good faith and that Defendants believe, in good faith, that such a motion is warranted by the facts of this case and applicable law. Similarly, Defendants may renew this motion in the event Plaintiff fails to comply with this order.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to strike Plaintiff's PAGA claim, Doc. No. 87, will be denied without prejudice to filing a motion consistent with this order after Plaintiff files a revised trial plan or fails to do so.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendants' motion to strike or dismiss, Doc. No. 87, is DENIED WITHOUT PREJUDICE;
2. If Plaintiff wishes to pursue a PAGA claim, he must file a revised trial plan reflecting this order, relevant findings in the Court's order on Plaintiff's motion for class certification, and relevant aspects of the Court's forthcoming order on Defendant's pending motion for summary judgment within 28 calendar days of the date of electronic service of the Court's order on Defendant's pending motion for summary

        judgment;

3. If Plaintiff fails to file a revised trial plan in the time specified above, Plaintiff may renew this motion or bring a similar motion with respect to the PAGA claim based on the Court's inherent case management authority; and

4. If Plaintiff files a revised trial plan in the time specified above, Plaintiff may bring a motion as to the PAGA claim based on the Court's inherent case management authority, provided Defendants' counsel has met and conferred with Plaintiff's counsel regarding the trial plan and believe in good faith that such a motion is warranted.

IT IS SO ORDERED.

Dated:   April 6, 2023                            _____
                                                      SENIOR DISTRICT JUDGE