1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

PAUL CLARK, individually, and on behalf
of other members of the general public
similarly situated,

                Plaintiffs,

v.

QG PRINTING II, LLC, a Connecticut
limited liability company;
QUAD/GRAPHICS, INC., a Wisconsin
corporation; and DOES 1 through 10,
inclusive,

                Defendants.

Case No. 1:18-cv-00899-AWI-EPG

**ORDER ON DEFENDANTS' MOTION
FOR PARTIAL SUMMARY
JUDGMENT**

(Doc. No. 88)

Plaintiff Paul Clark is suing Defendants Quad/Graphics, Inc. ("QG") and QG Printing II,
LLC ("QG Printing" and, together with QG, "Defendants") for alleged violations of the California
Labor Code ("Labor Code") at four commercial printing facilities in California, including claims
relating to meal periods, rest periods, off-the-clock work, business expenses and wage statements.
The operative complaint is the Second Amended Complaint ("SAC"), which was filed on
September 6, 2019. Doc. No. 29.

Defendants have brought a motion seeking summary judgment on certain claims and
issues. Doc. No. 88. The motion has been fully briefed and deemed suitable for decision without
oral argument pursuant to Local Rule 230(g). See Doc. No. 97. For the reasons that follow,
Defendants' motion will be granted in part and denied in part.

## BACKGROUND

QG is a Wisconsin corporation with commercial printing facilities throughout the United

1  States. Doc. No. 49 at 10:4-6.[1] QG Printing is a Connecticut limited liability company and a QG

2  subsidiary. Id. at 10:9-11. QG Printing operates four facilities in California: Merced, West

3  Sacramento, Riverside – Jurupa Valley, and Riverside – Box Springs. Id. at 10:13-16. Plaintiff

4  was a non-exempt, hourly-paid press assistant in the press production area at QG Printing's

5  Merced facility. Id. at 10:25-11:2.

6         Plaintiff filed this class action in Merced County Court on May 29, 2018, seeking to

7  represent an overarching class of several hundred non-exempt, hourly employees who worked in

8  QG Printing's California facilities in the four-year period prior to the filing of the action. Doc. No.

9  1. Defendant removed the action to this judicial district on June 29, 2018, id., and it was assigned

10 to this Court on July 2, 2018. Doc. No. 7.

11        The SAC alleges claims for violations of: (i) Labor Code §§ 510 and 1198 (Unpaid

12 Overtime); (ii) Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages);

13 (iii) Labor Code §§ 226.7, 512(a), and 1198 (Failure to Provide Meal Periods); (iv) Labor Code §§

14 226.7 and 1198 (Failure to Provide Rest Periods); (v) Labor Code §§ 226(a), 1174(d), and 1198

15 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); (vi) Labor Code §§

16 201, 202, and 203 (Wages Not Timely Paid Upon Termination); (vii) Labor Code § 2802

17 (Unreimbursed Business Expenses); (viii) Labor Code §§ 551, 552, and 558 (Failure to Provide

18 One Day of Rest in Seven); (ix) Labor Code §§ 2698, et seq. (Civil Penalties Under PAGA for

19 Violations of Labor Code); (x) California Business & Professions Code §§ 17200, et seq.

20 (Unlawful Business Practices); and (xi) California Business & Professions Code §§ 17200, et seq.

21 (Unfair Business Practices). Doc. No. 34.

22        On November 8, 2019, Plaintiff brought a motion pursuant to Rule 23(a) and Rule 23(b)(3)

23 of the Federal Rules of Civil Procedure, Doc. No. 46, to certify an overarching class comprising

24 approximately 1,200 members, see Doc. No. 54 at 13:20-26, and seven subclasses pegged to

25 alleged Labor Code violations, including a First Meal Break Subclass, a Second Meal Break

26 Subclass, a Rest Break Subclass, a Meal Break Waiver Subclass, an Off-the-Clock Work Subclass,

27

28 [1] Unless otherwise indicated, page citations to documents on the Court's electronic docket are to the page number in the CM/ECF stamp at the top of each page.

1   a Business Expense Subclass and a Derivative Claims Subclass. Id. at 3:7-4:11. Certification was

2   granted with respect to the Meal Break Waiver Subclass and the Business Expense Subclass, and

3   denied as to the other five subclasses. See generally Doc. No. 54.

4                           **SUMMARY JUDGMENT FRAMEWORK**

5        Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

6   appropriate when it is demonstrated that there exists no genuine issue as to any material fact and

7   that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see Fortyune

8   v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079–80 (9th Cir. 2004).

9        Rule 56(a)[2] provides for "partial summary judgment" on individual claims and defenses, as

10  well as parts of claims or defenses. Fed.R.Civ.P. 56(a). A motion for partial summary judgment is

11  governed by the same standards as a motion for summary judgment. Washington Mut. Inc. v.

12  U.S., 636 F.3d 1207, 1216 (9th Cir. 2011); Jadwin v. County of Kern, 610 F.Supp.2d 1129, 1141

13  (E.D. Cal. 2009).

14        The moving party bears the burden of establishing the absence of a genuine issue of

15  material fact, generally by "citing to particular parts of materials in the record," such as

16  depositions, interrogatory answers, declarations, and documents. Fed.R.Civ.P. 56(c); see also

17  Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000). If the

18  moving party does not meet this burden, "[s]ummary judgment may be resisted and must be

19  denied on no other grounds than that the movant has failed to meet its burden of demonstrating the

20  absence of triable issues." Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir. 1993).

21        If the moving party does meet this burden, the burden then shifts to the opposing party to

22  show a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

23  U.S. 574, 586-87 (1986); see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210

24  F.3d 1099, 1103 (9th Cir. 2000). "Only disputes over facts that might affect the outcome of the

25  suit under the governing law will properly preclude the entry of summary judgment." Anderson v.

26  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

27

28  [2] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

In response to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586; <u>Liberty Lobby</u>, 477 U.S. at 247-48 ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " <u>Matsushita</u>, 475 U.S. at 587; <u>Liberty Lobby</u>, 477 U.S. at 248 (a "dispute about a material fact is 'genuine' " where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 248 (1986) (quoting <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 288–89 (1968)) (internal quotation marks omitted). If the nonmoving party does not produce enough evidence to create a genuine issue of material fact after the burden has shifted, the moving party is entitled to summary judgment. Fed.R.Civ.P. 56(c); <u>Fritz</u>, 210 F.3d at 1103; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## **DISCUSSION[3]**

The Court will address each aspect of Defendants' motion for summary judgment in turn.

---

[3] Defendants request that the Court take judicial notice of records from certain state and federal court cases, as well as California legislative history and information regarding the price of footwear on www.amazon.com and www.walmart.com. Doc. No. 88-3. The request is GRANTED as to court records and legislative history. Fed. R. Evid. 201(b); <u>U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992). The Court cannot, however, take judicial notice as to the truth of the contents of commercial websites, <u>see</u> <u>Woodall v. Walt Disney Co.</u>, 2021 WL 2982305, at *3 (C.D. Cal. Apr. 14, 2021), and the price of footwear is irrelevant to the disposition of this motion. The request for judicial notice is therefore DENIED as to www.amazon.com and www.walmart.com.

Further, Defendants object to certain evidence adduced by Plaintiff in opposition to this motion. Doc. Nos. 96-1. The objections do not bear on the disposition of any aspect of this motion and are therefore OVERRULED.

Finally, Plaintiff objects to certain evidence adduced by Defendant in support of this motion. Doc. No. 94-2. Specifically, Plaintiff asserts that the statement that Plaintiff's "last day of active work for QG Printing was December 6, 2017," is vague, ambiguous, overly broad, confusing, lacking in foundation and unsupported by admissible evidence. <u>Id.</u> at 94-2 at 2. The Court had no trouble deciphering the meaning of this simple statement. Further, it is uncontradicted and directly supported by pay statements and a sworn declaration from a declarant with relevant personal knowledge. The objection is therefore OVERRULED. Plaintiff's other objections are OVERRULED on the ground that they do not bear on the disposition of this motion.

**A.**    <u>**Meal Break Waiver Claim**</u>

The Third Cause of Action in the SAC alleges various meal period violations under sections 226.7, 512(a), and 1198 of the Labor Code. Doc. No. 34 ¶¶ 72-83. Plaintiff asserts, in particular, that "Plaintiff and class members did not sign valid meal period waivers on days that they were entitled to meal periods," <u>id.</u> ¶ 62, and that prospective meal break waivers signed "in advance (as opposed to on a specific workday) … are invalid and unenforceable, because Defendants' obligation to provide employees with meal breaks does not arise until it has employed them for a full five [] hours." <u>Id.</u> ¶ 80. Defendants seek summary judgment on the Third Cause of Action to the extent it is predicated on the contention that Defendants' prospective meal break waivers are unlawful. Doc. No. 88-1 at 15:12-14.

    **1.**     **Applicable Law**

Section 512(a) of the Labor Code states as follows:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Lab. Code § 512(a).

Section 226.7 of the Labor Code states:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.
>
> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Cal. Lab. Code § 226.7.

Industrial Welfare Commission ("IWC") Wage Order No. 1-2001 states, in relevant part:

> (A) No employer shall employ any person for a work period of more than five (5)

hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

IWC Wage Order 1-2001, Cal. Code Regs. tit. 8, § 11010(11)(A)-(B).

Section 1198 of the Labor Code does not pertain to the issue at bar.

## 2.    Discussion

Plaintiff argues that prospective meal break waivers such as those used by Defendants are "invalid and unlawful" because the California Supreme Court found in *Brinker Restaurant Corporation v. Superior Court* that a "meal break obligation is triggered" when an "employer engages, suffers or permits anyone to work for a full five hours" and that once such an obligation arises "an employer is put to a choice" (depending, in part, on circumstances) of "afford[ing] an off-duty meal period," "consent[ing] to a mutually agreed-upon waiver," or "obtain[ing] written agreement to an on-duty meal period." 53 Cal.4th 1004, 1039 (2012); Doc. No. 94 at 12:23-13:7. Plaintiff reads *Brinker* to mean that an employee cannot waive a given meal break until the employer's obligation to furnish that meal break has arisen. Id. at 10:6-8.

In *Klune v. Ashley Furniture Industries, Inc.*, a court in the Central District of California disposed of this argument in a footnote, finding that it "[did] not appear that the [*Brinker*] court intended to load any temporal dimension" onto waiver of meal periods or "preclude prospective waiver." 2015 WL 1540906, at *6 (C.D. Cal. Apr. 3, 2015). In *Castro v. PPG Industries, Inc.*, the same court affirmed and elaborated on that finding, stating as follows:

*Brinker*, despite describing what an employer must do "after" a meal break obligation is triggered, does not specifically prohibit that the employer's consent to a waiver that will end a shift or preclude the employer from obtain[ing] a written agreement prior to a specific meal break. Absent controlling authority prohibiting the type of voluntary meal break waiver at issue here, this Court does not endorse the unworkable meal break waiver policy Plaintiff seeks to impose that would require an employer to obtain a separate waiver for each meal break an employee agrees to waive.

2021 WL 99724, at *5 (C.D. Cal. Jan. 8, 2021), aff'd in part, rev'd in part, dismissed in part on

1   other grounds sub nom. Castro v. PPG Indus., Inc., 2022 WL 3681305 (9th Cir. Aug. 25, 2022).

2   The Court agrees with these views on *Brinker* and the legitimacy of prospective waiver. Further,

3   the Court notes that California law requires "mutual consent" to meal period waiver, such that

4   Plaintiff's interpretation of *Brinker* would arguably compel an employee to take a meal break—

5   even if he or she preferred not to—if no authorized agent of the employer were available at the

6   300-minute mark (for first meal breaks) and the 600-minute mark (for second meal breaks) to

7   consent to the continuation of work. See Cal. Labor Code § 512(a) (stating that 30-minute meal

8   periods are required after five hours of work and after 10 hours of work unless "waived by mutual

9   consent"). That strikes the Court as unworkable, unfair to employees, and inconsistent with the

10   purpose of statutory and regulatory protections with respect to meal periods. See Madeira v.

11   Converse, Inc., 2022 WL 109365, at *6 (C.D. Cal. Jan. 11, 2022) ("join[ing] other sister courts in

12   declining to endorse [an] unworkable meal break waiver policy … that would require an employer

13   to obtain a separate waiver for each meal break an employee agrees to waive") (quoted source and

14   internal quotation marks omitted).[4]

15        Plaintiff also argues that the waiver form is not enforceable against him because he did not

16   read it, Doc. No. 94-1 at 27:22-28:6, and because he thought he had to "sign" it to work at QG

17   Printing. Id. at 35:11-23. The waiver, however, contains a provision that states: "I acknowledge

18   that I have read the Waiver, understand it, and voluntarily agree to its provisions." Doc. No. 88-1

19   at 12:13-14. Further, it is settled law that mere failure on the part of a signatory to read a document

20   does not negate the document's contents or effect, see George v. Bekins Van & Storage Co., 33

21   Cal.2d 834, 848 (1949) ("immaterial… that neither [plaintiff] read the contract they accepted);

22   N.A.M.E.S. v. Singer, 90 Cal.App.3d 653, 656 (1979) (party bound by agreement even if he did

23   not read it), and Plaintiff sets forth no facts from which a jury could infer that he was pressured or

24   mislead in connection with the waiver. See Madeira, 2022 WL 109365 at *6. Similarly, the Court

25

26   ─────────────

27   [4] Plaintiff cites an August 13, 2003 opinion letter from the California Division of Labor Standards Enforcement ("DLSE") stating that "the decision to forego [] a meal period must be made personally by each worker on a daily basis." Doc. No. 94 at 15:5-13. That opinion, however, "was specifically limited to meal break waivers for agricultural

28   workers and relied on a statutory provision applicable only to agricultural workers." See Castro, 2021 WL 99724 at *5 n.4. The Court therefore declines to give it weight here. See id.

1    notes that if Plaintiff had merely signed the document containing the waiver (as he supposedly felt

2    compelled to do) no waiver would have taken effect since waiver required the additional

3    affirmative step(s) of indicating via check mark(s) whether Plaintiff waived the first meal period,

4    the second meal period or both. See Doc. No. 88-1 at 12:7-15.

5        The waiver form at issue here, see Doc. No. 11:26-12:15, involves a voluntary, rescindable

6    waiver and otherwise appears to comport with applicable law. See Lewis v. Wendy's Int'l, Inc,

7    2010 WL 11452279, at *7 (C.D. Cal. Mar. 24, 2010) (finding that form stating that meal periods

8    were waived "voluntarily" and that an employee could "rescind or reinitiate" the waiver

9    "complie[d] with the California Labor Code" (citing Cal. Labor Code § 512 (a)). The Court

10   therefore finds that Defendants are entitled to summary judgment on the Third Cause of Action to

11   the extent it is predicated on the theory that Defendant's meal period waivers were unlawful and to

12   summary judgment on the Meal Break Waiver Subclass. See Doc. No. 88-1 at 15:11-18, 18:11-13.

13   **B.    Failure to Reimburse Business Expenses**

14       Plaintiff's Seventh Cause of Action alleges that "Defendants, on a company-wide basis,

15   mandated that Plaintiff and class members purchase special safety shoes such as steel-toed boots,

16   which they were required to wear while at work" and that "Plaintiff purchased steel-toed boots …

17   totaling approximately $202, but was not reimbursed for these costs." Doc. No. 34 ¶ 108.

18   According to Plaintiff, "Defendants' company-wide policy and/or practice of passing on their

19   operating costs to Plaintiff and class members by requiring that they purchase steel-toed boots[]

20   violates California Labor Code section 2802." Id. ¶ 111.

21       Defendants contend that this claim fails as a matter of law because: "(1) employers are not

22   required to supply generic non-uniform apparel; (2) it is undisputed that Defendants provided

23   employees with $50 every year for safety shoes …; and (3) Defendants … are unaware of facts

24   suggesting that the purchase of shoes costing more than $50 is reasonably necessary." Doc. No.

25   88-1 at 18:15-24.

26       **1.    Applicable Law**

27       Section 2802(a) of the Labor Code provides that "[a]n employer shall indemnify his or her

28   employee for all necessary expenditures … incurred by the employee in direct consequence of the

discharge of his or her duties or of his or her obedience to the directions of the employer ….” Cal. Labor Code § 2802(a). Section 2802(a) is intended to prevent employers from passing operating expenses on to their employees. <u>Cochran v. Schwan’s Home Service, Inc.</u>, 228 Cal.App.4th 1137, 1144 (2014).

### 2. Discussion

In *Lemus v. Denny’s Inc.*, a Denny’s employee asserted that Denny’s (the restaurant chain) was required to reimburse its employees for the cost of slip-resistant shoes as “necessary expenditures” under section 2802(a). 617 F.App’x 701, 703 (9th Cir. 2015) (not selected for publication). The Ninth Circuit affirmed summary judgment in Denny’s favor, finding that plaintiff could not present “any authority that has applied section 2802 in a way that requires an employer to pay for an employee’s non-uniform work clothing” and that it was impossible to do so because under California law, “a restaurant employer must only pay for its employees’ work clothing if the clothing is a ‘uniform’ or if the clothing qualifies as certain protective apparel regulated by … OSHA.”[5] <u>Id.</u> (citation omitted).

---

[5] The California Occupational Safety and Health Act of 1973 (“OSHA”), California Labor Code §§ 6300, et seq., contains certain provisions relating to protective apparel.

Section 6401 states:

Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees.

Cal. Labor Code § 6401.

Section 6403 states:

No employer shall fail or neglect to do any of the following:

(a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.
(b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe.
(c) To do every other thing reasonably necessary to protect the life, safety, and health of employees.

Cal. Labor Code § 6403.

The SAC and Plaintiff’s opposition to Defendants’ motion for partial summary judgment make reference to sections 6401 and 6403 of the Labor Code with the implication that they provide a basis for recovery, see, e.g. Doc. No. 94 at 17:17-24, but Plaintiff sets forth no facts showing that he has satisfied procedural requirements for bringing claims under those statutes. See Cal. Labor Code § 2699.3(b). In fact, the motion for summary judgment effectively concedes that Plaintiff has not done so. See Doc. No. 94 at 17 n.4 (stating that “Plaintiff’s expense reimbursement claim was certified by this Court pursuant to Labor Code section 2802” and that consequently “Plaintiff need not rely upon section 6401 or 6403” or “satisfy any conditions precedent required by such statutes”). The Court will therefore

1      In *Townley v. BJ's Restaurants, Inc.*, similarly, plaintiff brought suit against BJ's

2   Restaurants, alleging, *inter alia*, that BJ's was in violation of section 2802 because it required—

3   but did not supply or provide reimbursement for—" 'slip resistant, black, close-toed shoes' for

4   safety reasons." 37 Cal.App.5th 179, 181 (2019). The trial court granted summary judgment in

5   BJ's favor, finding that section 2802 did not require BJ's to reimburse its hourly restaurant

6   employees for the cost of the required footwear. The California Court of Appeal followed the

7   reasoning of *Lemus* and affirmed, finding that "BJ's [was] not required, as a matter of law, to

8   reimburse its employees for the cost of the slip-resistant shoes at issue … under section 2802"

9   because "[t]he cost of the shoes does not qualify as a 'necessary expenditure' within the meaning

10   of the statute." Id. at 185. Further, the court noted that Plaintiff did not argue that the shoes "were

11   part of a uniform or were not usual and generally usable in the restaurant occupation" and that she

12   did not "cite any authority holding that an employer is required, under section 2802, to reimburse

13   an employee for basic, nonuniform wardrobe items." Id.

14      The Court notes that Defendants' Employee Handbook expressly required that employees

15   (including Plaintiff) "wear protective footwear." Doc. No. 94 at 8:7-14. Plaintiff makes no

16   showing, however, that Defendants required footwear that was "part of a uniform" or that was not

17   "usual and generally usable" in other manufacturing contexts. The Court sees no material

18   distinction for section 2802 purposes between the slip-resistant shoes at issue in *Lemus* and

19   *Townley* and the safety-related footwear at issue in this case. Defendants are therefore entitled to

20   summary judgment on Plaintiff's Seventh Cause of Action. In light of this ruling, the Court need

21   not address Defendants' other arguments as to the Seventh Cause of Action.

22   **C.    PAGA Claim**

23      To facilitate broader enforcement, the California Legislature enacted PAGA authorizing

24   "aggrieved employees" to pursue civil penalties for violations of the Labor Code on the state's

25   behalf. Kim v. Reins Int'l California, Inc., 9 Cal.5th 73, 81 (2020) (quoting Cal. Labor Code §

26   2699 (a)) (internal quotation marks omitted); see also Magadia v. Wal-Mart Assocs., Inc., 999

27   _____

28   grant summary judgment in Defendants' favor to the extent the Seventh Cause of Action is predicated on section 6401
    or section 6403 of the Labor Code.

1  F.3d 668, 672 (9th Cir. 2021); Thomas v. Home Depot USA Inc., 527 F.Supp.2d 1003, 1006–07

2  (N.D. Cal. 2007). Of the civil penalties recovered, 75 percent goes to the Labor and Workforce

3  Development Agency ("LWDA"), leaving the remaining 25 percent for the "aggrieved

4  employees." Reins, 9 Cal.5th at 81 (quoting Arias v. Superior Court, 46 Cal.4th 969, 980-981

5  (2009)) (internal quotation marks omitted). "Recovery of civil penalties under [PAGA] requires

6  proof of a Labor Code violation," Arias, 46 Cal.4th at 987, and if judgment is granted on a given

7  Labor Code violation, the corresponding "portion of the PAGA claim necessarily fails." Silva v.

8  See's Candy Shops, Inc., 7 Cal.App.5th 235, 258-59 (2016), disapproved on other grounds in

9  Donohue v. AMN Servs., LLC, 11 Cal. 5th 58, 77 (2021).

10      Plaintiff's Ninth Cause of Action is for civil penalties under PAGA, Doc. No. 34 ¶¶ 119-

11  27, based on: (i) failure to provide all required overtime pay; (ii) failure to compensate Plaintiff

12  and other aggrieved employees with at least minimum wages for all hours worked; (iii) failure to

13  provide meal and/or rest periods; (iv) failure to provide accurate and complete wage statements;

14  (v) failure to maintain payroll records; (vi) failure to pay all earned wages during employment;

15  (vii) failure to pay all earned wages upon termination; (viii) failure to reimburse Plaintiff and other

16  aggrieved employees for business expenses; (ix) failure to provide one day's rest in seven; and (x)

17  failure to provide personal protective equipment. Doc. No. 34 at 30:22-31:22.

18      Defendants' various arguments as to why partial summary judgment should be granted on

19  certain portions of Plaintiff's PAGA claim are addressed below. See Doc. No. 88 at 23-31.

20      **1.      Lack of Underlying Labor Code Violation**

21      Defendants first argue that they are entitled to summary judgment on the portions of the

22  PAGA claim based on "the reimbursements and meal period waiver theories." Doc. No. 88-1 at

23  23:6-14. As set forth above, Plaintiff's meal break waiver subclass fails as a matter of law because

24  Plaintiff cannot show that Defendants' prospective meal break waivers are invalid. Further,

25  Plaintiff's business expense subclass fails as a matter of law because Defendants were not

26  obligated to furnish or provide reimbursement for protective footwear under section 2802 and

27  Plaintiff fails to show that he satisfied the administrative prerequisites for claims under sections

28  6401 and 6403. Defendants are therefore entitled to summary judgment on corresponding portions

1  of the PAGA claim. See Silva, 7 Cal.App.5th at 258-259.[6]

2      **2.**    **Timeliness**

3      Defendants contend that Plaintiff's PAGA claim is barred in its entirety by PAGA's one-

4  year statute of limitations since the last day Plaintiff performed work for QG Printing was

5  December 6, 2017 "[y]et[] Plaintiff waited until December 7, 2018 to file his PAGA notice with

6  the LWDA." Doc. No. 88-1 at 25:7-16. Plaintiff, for his part, argues that his claims continued to

7  accrue after he stopped performing work for QG Printing and that the one-year PAGA statute of

8  limitations did not start to run until his last day of employment, which was in April 2018. Doc.

9  No. 94 at 19:17-20:15. Further, Plaintiff contends that he has "several claims based on Labor Code

10  violations that were [not] committed against [him] until the very end of his employment,"

11  including: "violation of Labor Code section 204 for failure to pay all earned wages during

12  employment; violation of Labor Code sections 201, 202, and 203 for failure to pay all earned

13  wages upon termination; violation of Labor Code sections 226(a), 1198, and the applicable IWC

14  wage order for failure to provide accurate and complete wage statements to Plaintiff and other

15  aggrieved employees; and violations of Labor Code sections 1174(d), 1198, and the applicable

16  IWC wage order for failure to maintain payroll records." Id. at 20:17-24.

17          a.    Applicable Law

18      The statute of limitations on a PAGA claim is one year. See Cal. Civ. Proc. Code § 340;

19  Brown v. Ralphs Grocery Co., 28 Cal.App.5th 824, 839 (2019). "Generally, a statute of limitations

20  begins to run when a cause of action accrues, meaning when the cause of action is complete with

21  all of its elements." Esparza v. Safeway, Inc., 36 Cal.App.5th 42, 59–60 (2019), as modified on

22  denial of reh'g (June 28, 2019) (citation omitted). In the context of PAGA claims, however,

23  violations of a continuing or recurring obligation give rise to "continuous accrual," meaning that

24  "a cause of action accrues each time a wrongful act occurs, triggering a new limitations period."

25

26  _____

27  [6] Further, the Court agrees with Defendants that Plaintiff cannot base a PAGA claim on a violation of California's
Unfair Competition Law ("UCL"), California Business & Professions Code, §§ 17200, et seq., see Doc. No. 88-1 at
22:8-9, since a PAGA claim requires an underlying Labor Code violation. See Arias, 46 Cal.4th 987. The Ninth and

28  Tenth Causes of Action in the SAC arise solely from alleged UCL violations. Doc. No. 34 ¶¶ 128-46, and thus do not
provide a basis for a PAGA claim.

Id. (quoted source and internal quotation marks omitted).

An employee must furnish notice to the LWDA and his or her employer before filing a PAGA action, Cal. Labor Code § 2699.3(a), and a PAGA claim is time-barred if this statutorily required notice is not furnished in the manner specified in section 2699.3(a)(1)(A) of the Labor Code within one year of the claim's accrual. See Culley v. Lincare Inc., 236 F.Supp.3d 1184, 1192 (E.D. Cal. 2017) (finding that "all violations occurring over a year prior to [the date of LWDA notice] would be time-barred"); Soto v. Castlerock Farming & Transport Inc., 2012 WL 1292519, at *5–6 (E.D. Cal. Apr. 16, 2012) (Ishii, J.) ("[t]he courts have found that the LWDA notice must be filed within one year of the violation"); Moreno v. Autozone, Inc., 2007 WL 1650942, at *4–5 (N.D. Cal. June 5, 2007) (finding that "[t]he passage of approximately 20 months between the accrual of [plaintiff's PAGA claim] and her first pursuit of administrative remedies [was] fatal to the claim under the one-year limitations period" because "PAGA notice is a condition precedent to filing suit"); see also Mazzei v. Regal Entm't Grp., 2013 WL 6633079, at *4–5 (C.D. Cal. Dec. 13, 2013 (similar).

Finally, in federal court, a "[p]laintiff is unable to pursue a PAGA claim in a representative capacity if his own claim is time-barred." Liu v. Win Woo Trading, LLC, 2016 WL 3279466, at *6 (N.D. Cal. June 15, 2016) (citing Thomas, 527 F.Supp.2d at 1008-1009 ("Plaintiff cannot go forward in a representative capacity with his PAGA claims after the one-year statute of limitations under CCP § 340(a) has run")); see also Slay v. CVS Caremark Corp., 2015 WL 2081642, *10 (E.D. Cal. 2015) (a plaintiff cannot "pursue PAGA claims in a representative capacity when his own claims are time-barred").[7]

---

[7] Plaintiff argues that under the state court case, *Johnson v. Maxim Healthcare Servs., Inc.*, 66 Cal.App.5th 924 (2021), an employee whose individual claim is time-barred may pursue a representative claim under PAGA. Doc. No. 94 at 21:1-14. The Court, however, is unable to reconcile *Johnson* with the Ninth Circuit's implicit finding in *Magadia v. Wal-Mart Associates, Inc.* that PAGA does not provide a sufficient substitute for the incentives implicit in an individual cause of action to justify entrusting a plaintiff who has no individual cause of action with litigation on behalf of others. See Magadia, 999 F.3d at 676 (noting that PAGA "binds … nonparty employees from seeking additional penalties under the statute" and finding that PAGA "conflicts with Article III's core principle that each plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties' " (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). At bottom, a PAGA claim is more analogous, in the Court's view, to a class action than a *qui tam* action when it comes to the question of whether a plaintiff with a time-barred claim can litigate in a representative capacity. Cf. Blackwell v. SkyWest Airlines, Inc., 245 F.R.D. 453, 463 (S.D. Cal. 2007) ("Plaintiff experienced no harm within the one year statute of limitations" and

13

b.   <u>Discussion</u>

The Court agrees with Defendants that the statute of limitations on portions of Plaintiff's PAGA claim that are based on Labor Code violations that could only occur while Plaintiff was performing work for QG Printing—as opposed to merely being in the employ of QG Printing—must have started running on or before December 6, 2017. <u>See</u> <u>Esparza</u>, 36 Cal.App.5th at 59–60. Since Plaintiff did not furnish PAGA notice to the LWDA until December 7, 2018, all such claims are time-barred. <u>See</u> <u>Culley</u>, 236 F.Supp.3d at 1192. By the same token, however, the Court agrees with Plaintiff that to the extent actionable Labor Code violations occurred after Plaintiff's last day of work, corresponding portions of Plaintiff's PAGA claim are not barred by the one-year statute of limitations applicable to PAGA claims.

Plaintiff's First Cause of Action alleges that Defendants violated sections 510 and 1198 of the Labor Code by failing to pay overtime, Doc. No. 34 ¶¶ 55-65; the Second Cause of Action alleges that Defendants violated sections 1182.12, 1194, 1197, 1197.1 and 1198 of the Labor Code by failing to "pay at least minimum wages to Plaintiff and [other employees] for all of the hours they worked," <u>id.</u> ¶¶ 66-71; and the Sixth Cause of Action alleges that Defendants violated sections 201, 202 and 203 of the Labor Code by failing to pay "Plaintiff and [others] who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." <u>Id.</u> ¶¶ 101-105. According to the record, Plaintiff earned regular wages and overtime wages (including double time wages) in the pay period ending December 9, 2017. Doc. No. 88-4 at 45. Thus, it appears Plaintiff may have suffered harm due to the Labor Code violations alleged in the First, Second and Sixth Causes of Action[8] within one year of December 7, 2018, and the Court cannot find on this motion that

---

thus could not serve as class representative on claim for inaccurate wage statement under Labor Code § 226(a)); <u>see also</u> <u>Lindblom v. Santander Consumer USA, Inc.</u>, 2018 WL 573356, at *5 (E.D. Cal. Jan. 26, 2018) ("[T]his Court and other courts in this Circuit routinely preclude potentially time-barred plaintiffs from serving as class representatives when they seek to represent members with timely claims.")(collecting cases). The Court therefore finds, in keeping with other federal courts that have addressed the issue, that a plaintiff whose PAGA claim as to a certain Labor Code violation is time-barred may not prosecute in federal court a representative PAGA claim based on the same Labor Code violation. <u>See</u> <u>Liu</u>, 2016 WL 3279466 at *6.

[8] In *Magadia*, the Ninth Circuit found that an employee must satisfy all three requirements of Article III standing as to each portion of a PAGA claim, and that a mere statutory violation is not sufficient, without more, to establish

1    corresponding portions of the PAGA claim are time-barred.

2         Plaintiff's Fifth Cause of Action alleges that Defendants violated sections 226(a), 1174(d)

3    and 1198 of the Labor Code by, *inter alia*, "fail[ing] to correctly list: gross wages earned; total

4    hours worked; net wages earned; all applicable hourly rates in effect during the pay period,

5    including overtime rates of pay; and the corresponding number of hours worked at each hourly

6    rate." Doc. No. 34 ¶¶ 92-100. This cause of action specifically addresses wage statement

7    information required to determine whether wages have been calculated correctly, see Magadia,

8    999 F.3d at 679-80; cf. Castro, 2022 WL 3681305 at *1, and as noted above, it appears that

9    Plaintiff received at least one pay statement reflecting work and corresponding wages within the

10   year prior to December 7, 2018. The Court therefore cannot find on this motion that representative

11   PAGA claims predicated on the Labor Code violations alleged in the Fifth Cause of Action are

12   time-barred.

13        Plaintiff's Fourth Cause of Action alleges that Defendants violated sections 226.7 and

14   1198 of the Labor Code by failing to provide required rest breaks, Doc. No. 34 ¶¶ 84-91, and the

15   Eighth Cause of Action alleges that Defendants violated sections 551, 552 and 558 of the Labor

16   Code by failing to provide one day's rest in seven. Id. ¶¶ 113-18. As they pertain to Plaintiff, the

17   alleged deprivations must have occurred, if at all, while Plaintiff was performing work for

18   Defendants. Thus, corresponding portions of the representative PAGA claim are time-barred.

19        Plaintiff's Third Cause of Action alleges that Defendants failed to provide meal periods in

20   violation of sections 226.7, 512(a) and 1198 of the Labor Code, Doc. 34 ¶¶ 72-83, and Plaintiffs'

21   Seventh Cause of Action is brought under section 2802 of the Labor Code for failure to provide

22   reimbursement for protective footwear. Id. ¶¶ 106-12. As set forth above, Plaintiff's Seventh

23   Cause of Action fails in its entirety because Defendants have no duty under section 2802 to

24   _____

25   "concrete harm" for standing purposes. 999 F.3d at 679-80 (finding that employer's failure to furnish pay rate
     information and pay-period dates in final paycheck, in violation of sections 226(a)(6) and 226(a)(9) of the Labor

26   Code, caused plaintiff "concrete harm" because it impeded plaintiff's ability to test accuracy of employer's wage
     calculations); see also Castro v. PPG Indus., Inc., 2022 WL 3681305, at *1 (9th Cir. Aug. 25, 2022) (finding that

27   plaintiff did not suffer the "concrete injury" required for Article III standing to seek civil penalties under PAGA where
     employer violated section 226(a)(8) of the Labor Code by listing the address of its corporate parent, as opposed to its

28   own address, on pay statements).

provide reimbursement for protective footwear and because Plaintiff has not satisfied the administrative prerequisites for claims under section 6401 and 6403. Similarly, the Court has found that Plaintiff's Third Cause of Action fails as a matter of law to the extent it is predicated on the theory that Defendants' prospective meal break waivers were invalid. Further, Plaintiff cannot bring a PAGA claim for a meal break deprivation that might somehow fall outside the scope of his meal break waiver because any such deprivation must have occurred, if at all, on or before December 6, 2017, while Plaintiff was still performing work for Defendants. The Court therefore finds that portions of the PAGA claim arising from Labor Code violations alleged in the Third Cause of Action or the Seventh Cause of Action are time-barred.

Finally, no portion of the PAGA claim can be based on the Tenth Cause of Action or the Eleventh Cause of Action because they allege UCL violations, not violations of the Labor Code. See Arias, 46 Cal.4th 987.

### 3.      Timeframe for Potential PAGA Recovery

Defendants contend that if some portion of the PAGA claim is deemed actionable, any recovery must be limited to violations occurring in the period from and including January 1, 2018 through and including December 7, 2018. Doc. No. 88 at 26:18-28:8. The January 1, 2018 date is predicated on the one-year statute of limitations applicable to PAGA claims; the date on which notice was furnished to the LWDA; the waiting period under section 2699.3(a)(2)(A) of the Labor Code; and the date on which Plaintiff first alleged the PAGA claim. Doc. No. 88-1 at 26:10-24. The December 7, 2018 date is predicated on Defendants' contention that PAGA does not allow recovery of civil penalties for Labor Code violations that occur after notice is furnished to the LWDA. Id. at 27:12-23.

Plaintiff argues that pleadings relate back to the date on which LWDA notice is furnished, regardless of how much time elapses between the furnishing of LWDA notice and the filing of a corresponding PAGA claim. Doc. No. 94 at 22:12-23:2. Further, Plaintiff argues that Defendants' contention that he cannot seek penalties for Labor Code violations that occurred after December 7, 2018 ignores case law to the contrary. Id. at 23:4-24:1.

//

1          a.      Start Date

2          The Court essentially agrees with Defendants as to the earliest date for a PAGA claim.

3          As noted above, a plaintiff must provide the LWDA with notice—and an opportunity to

4  pursue civil penalties itself—before filing a PAGA claim. Cal. Labor Code § 2699.3(a). Further,

5  sections 2699.3(a)(2)(A)-(B) of the Labor Code provide that, unless the LWDA responds sooner, a

6  plaintiff must wait 65 days for a response from the LWDA before commencing a PAGA action.

7  Id. §§ 2699.3(a)(2)(A)-(B). Finally, section 2699.3(d) states that "[t]he periods specified in

8  [section 2699.3] are not counted as part of the time limited for the commencement of the civil

9  action to recover penalties …." Id. § 2699.3(d).

10         Federal courts have read the foregoing provisions to mean that, once a PAGA claim

11  accrues, the applicable one-year statute of limitations runs until notice is furnished to the LWDA

12  (and employers) as specified in section 2699.3(a)(1)(A),[9] and is then tolled under 2699.3(d) if the

13  LWDA does not respond. Singer v. Becton, Dickinson & Co., 2008 WL 2899825, at *6 (S.D. Cal.

14  July 25, 2008) (section 2699.3(d) provides "a mechanism to temporarily toll the statute of

15  limitations and therefore allows the timely commencement of claims for penalties under the Labor

16  Code brought more than one year after the cause of action accrues"); Moreno, 2007 WL 1650942

17  at *2 ("Section 2699.3(d) is clearly intended to toll the limitations period for bringing a civil

18  action to recover PAGA penalties while the plaintiff is pursuing administrative remedies."); see

19  also Martinez v. Antique & Salvage Liquidators, Inc., 2011 WL 500029, at *8–9 (N.D. Cal. Feb.

20  8, 2011), modified in part, 2011 WL 766683 (N.D. Cal. Feb. 25, 2011) (finding that, in light of

21  section 2699.3(d), section 2699.3(c)(2)(A) is properly read to toll PAGA claims during a 33-day

22  cure period); Soto, 2012 WL 1292519 at *7 (finding the tolling analysis in *Martinez* to be

23  "sound").

24         Plaintiff provided notice of the Labor Code violations underlying his prospective PAGA

25

26  [9] See, e.g., Culley, 236 F.Supp.3d at 1192 (finding that "the earliest point an amended complaint could relate back to
    is the date notice was provided to the LWDA" and that "all violations occurring over a year prior to that date would be
27  time-barred"); Soto, 2012 WL 1292519 at *6 ("courts have found that the LWDA notice must be filed within one year
    of the violation"); Santiago v. Amdocs, Inc., 2011 WL 1303395, *5 (N.D. Cal. Apr.2, 2011) ("plaintiffs' PAGA claim
28  is time-barred because the complaint alleges that plaintiffs … last worked for defendant in December 2008 and April
    2009 respectively and that they filed their administrative complaint with LWDA on or about August 25, 2010").

claim to the LWDA and Defendants on December 7, 2018. Consequently, the statute of limitations on Plaintiff's PAGA claim stopped running on December 7, 2018 and was automatically tolled for an additional 65 days under sections 2699.3(a)(2)(A) and 2699.3(d). Plaintiff commenced this action (in state court) on May 29, 2018, Doc. No. 3, but asserted his PAGA claim for the first time in the First Amended Complaint ("FAC"), which was filed in this Court on March 7, 2019. Doc. No. 14.

Defendants state that Labor Code 2699.3(a)(2)(A) "allows for up to 65 days tolling while awaiting a response from the LWDA," Doc. No. 88-1 at 26:18-22, and therefore concludes that January 1, 2018 is the earliest date for which Plaintiff can assert a PAGA claim when accounting for the one-year statute of limitations and tolling occasioned by notice to the LWDA and the subsequent waiting period. Id. at 26:18- 27:9. The Court agrees with Defendants that the actionable period is the year prior to the initial filing of a PAGA claim, see Walker v. CorePower Yoga, LLC, 2013 WL 2338675, *7 (S.D. Cal. May 28, 2013) ("Plaintiff's PAGA recovery is limited to the time period from one year prior to the filing of the complaint through Plaintiff's termination"); Gaasterland v. Ameriprise Financial Services Inc., 2016 WL 4917018, *3 (N.D. Cal. Sept. 15, 2016) (stating that, for a case filed on May 13, 2016, the relevant time period under the one-year PAGA statute of limitations began on May 13, 2015), plus any tolling. As indicated above, however, the Court's view is that section 2699.3 effectively provides for 66 days of tolling since the statute of limitations stops running on the date notice if furnished, see Culley, 236 F.Supp.3d at 1192, and section 2699.3(a)(2)(A) requires an employee to give the LWDA 65 days after the date of notice to undertake an investigation. Therefore, the Court would add one day to the actionable period calculated by Defendants and finds that December 31, 2017 is the earliest date for which Plaintiff can assert a PAGA claim.

b.    Civil Penalties for Continuing Violations After LWDA Notice

In *Magadia v. Wal-Mart Associates, Inc.*, a court in the Northern District of California found, based on thorough analysis of case law, statutory text and legislative history, that "PAGA penalties are not limited to redressing past violations of the California Labor Code for which the LWDA has been provided notice" and that "parties may seek to recover PAGA penalties on

1  continuing violations of the Labor Code even after the LWDA notice letter is sent." <u>Magadia v.</u>

2  <u>Wal-Mart Assocs., Inc.</u>, 384 F.Supp.3d 1058, 1109 (N.D. Cal. 2019), <u>rev'd in part, vacated in part</u>

3  <u>on other grounds</u>, 999 F.3d 668 (9th Cir. 2021). The court noted that defendant cited no authority

4  for the proposition that "additional letters to the LWDA" are necessary to pursue "continuing

5  violations" and concluded that "such a requirement would be contrary to the legislative intent

6  embodied in PAGA, which is to allow private actions to remedy Labor Code violations once the

7  LWDA is unable or unwilling to pursue an alleged violation." <u>Id.</u> Similarly, the court found that

8  language in section 2699.3(a)(1)(A) about Labor Code provisions "alleged to have been violated"

9  merely reflected the fact that it would be impossible for an employee to provide notice to the

10  LWDA of violations that had not yet occurred and that "nothing in the [PAGA] statute precludes

11  [an] aggrieved employee from seeking redress for [] continuing violations." <u>Id.</u>

12        This Court has previously allowed recovery of PAGA penalties for Labor Code violations

13  occurring after LWDA notice, <u>see</u> <u>Schiller v. David's Bridal, Inc.</u>, 2010 WL 2793650, at *7 (E.D.

14  Cal. July 14, 2010), and agrees with the Northern District's reasoning in *Magadia*. The Court

15  therefore finds that Plaintiff is not barred from seeking civil penalties under PAGA for continuing

16  Labor Code violations that occurred after Plaintiff furnished notice to the LWDA on December 7,

17  2018. <u>See</u> <u>Fleming v. Covidien Inc.</u>, 2011 WL 7563047, at *2 (C.D. Cal. Aug. 12, 2011)

18  (awarding PAGA penalties for a period of time after LWDA notice was furnished).

19  **D.      <u>Rest Breaks</u>**

20        Plaintiff's Fourth Cause of Action alleges rest break violations under sections 226.7 and

21  1198 of the Labor Code. Doc. No. 34 ¶¶ 84-91. Specifically, Plaintiff alleges that Defendants

22  failed to schedule rest breaks and "prevented Plaintiff and [others] from being relieved of all duty

23  in order to take compliant rest breaks." <u>Id.</u> ¶ 88.

24        Defendants seek partial summary judgment as to Plaintiff's individual claim for rest break

25  violations and the portion of the PAGA claim relating to rest break violations to the extent such

26  claims are based on "the theory that employees were not permitted to leave the premises during

27  rest breaks." Doc. No. 88-1 at 32:2-4. Defendants contend that such a policy is not unlawful and

28  that, in any event, "the undisputed facts show that Defendants did not prevent any employee from

1  leaving the premises." Id. at 32:9-11.

2       Reviewing the record, the Court sees no indication that Plaintiff was himself adversely

3  affected by—or even aware of—Defendants' alleged policy barring employees from leaving QG

4  Printing premises during a rest break. See Doc. No. 94-1 at 17:16-18:13; Doc. No. 94-3 at 44:5-

5  45:8 & 47:4-49:9. Plaintiff has therefore failed to show the "injury in fact" required for either an

6  individual claim or a PAGA claim based on such a policy, even assuming Defendants had such a

7  policy and that such a policy is illegal. See Magadia, 999 F.3d at 673-74; DaimlerChrysler Corp.

8  v. Cuno, 547 U.S. 332, 352 (2006) (noting Article III standing is "claim- and relief-specific, such

9  that a plaintiff must establish Article III standing for each of her claims and for each form of relief

10  sought"). Further, as stated above, the Court finds that the portion of Plaintiff's PAGA claim

11  relating to rest break violations is time-barred because any rest break violations affecting Plaintiff

12  must have occurred on or before December 6, 2017—during the period that Plaintiff performed

13  work for Defendants.

14       Defendants are therefore entitled to partial summary judgment on Plaintiff's individual

15  Labor Code claim for rest break violations to the extent it is predicated on "the theory that

16  employees were not permitted to leave the premises during rest breaks." And Defendants are

17  entitled to summary judgment on all portions of the PAGA claim predicated on the rest break

18  violations alleged in the Fourth Cause of Action.

19  **CONCLUSION**

20       For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion

21  for partial summary judgment. Doc. No. 88.

22  **ORDER**

23       Accordingly, IT IS HEREBY ORDERED that Defendants' motion for partial summary

24  judgment (Doc. No. 88) is GRANTED IN PART and DENIED IN PART as set forth above.

25

26  IT IS SO ORDERED.

27  Dated: __April 7, 2023__         _____

                    SENIOR  DISTRICT  JUDGE

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28